THE STAFFORDVILLE GRAVEL COMPANY, PLAINTIFF IN ERROR, v. TIMOTHY P. NEWELL, TRUSTEE, DEFENDANT IN ERROR.

1. A conveyance in its premises described the estate conveyed as "reversions and remainder;" the deed was ancient, and there was no reversion that any particular estate had ever existed. *Held* that, looking at the deed in all its parts, the effect of it was to convey the fee, which was the interest vested in the grantor at the time.

2. A special covenant of warranty of title, embraced by particular description all the interest in estate possessed by the grantor in the premises which was a fee. *Held*, that purchasers deriving title from the heirs of such grantor were estopped thereby from denying that a fee had been conveyed by the deed containing such warranty.

3. A person with notice of a prior unrecorded deed, and who then takes title, cannot, by conveying the estate so acquired to a trustee for his benefit, thereby defeat such prior title.

On error to the Supreme Court.

For the plaintiff in error, *Thomas E. French* and *Martin P. Grey.*

For the defendant in error, *Isaac W. Carmichael* and *Barker Gummere.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This is an action of ejectment. Both the title of the plaintiff and that of the defendant came from the same source, that is, from one James M. De Bow.

Newell was the plaintiff in the court below, and the Circuit judge directed the jury, on the admitted facts in proof, to find for him.

The defendant's written title antedated that of the plaintiff, but it was conceived that such title was intrinsically bad on two grounds.

NOTE.—This case should have been printed in *23 Vroom.* The opinion, although duly filed, was not delivered to the reporter in time for publication in that volume.

*First.* That the deed of conveyance produced by the defendant, and on which he relied, did not create any present right to the possession of the property, and would not, therefore, support the defence.

The instrument thus put in question was obviously the work of an unskilled hand.   It is dated May 10th, 1834, and was made by James M. De Bow, already mentioned, to thirty-two grantees, and after naming them thus proceeds : " For and in consideration of the sum of one hundred and fifty dollars, lawful money of the United States, to him in hand paid. by the said party of the second part, the receipt whereof he,. the said James M. De Bow, doth hereby acknowledge, and thereof doth discharge the said party of the second part, their· heirs and assigns forever, hath granted, bargained, sold,. aliened, released, enfeoffed, conveyed and confirmed, and by these presents doth grant, bargain, sell, alien, release, enfeoff,. convey and confirm unto the said party of the second part,. their heirs and assigns, the *reversions and remainder* of all that lot of pine land, situate," &c. (description), " containing· six hundred and ninety-nine acres, after deductions and the· usual allowance for highways, excepting, nevertheless, such parts of said survey as may have been mislocated on prior· surveys, and also such parts and parcels as have been heretofore sold by the said James M. De Bow, together with the· houses, building, privileges, hereditaments and appurtenance to the same belonging or in anywise appertaining, and all the· estate, right, title, interest, property, claim and demand whatsoever, either in law or equity, the said ————, of, in and to the same, or in any part thereof, to have and to hold the· above bargained premises, with the appurtenances, to the said party of the second part, their heirs and assigns, to the only proper use, benefit and behoof of the said party of the second part, their heirs and assigns forever."

Then ensues, among other covenants, one for the quiet possession of the grantee, &c., " against," in the language of the deed, " the lawful claim and demand of all persons claiming under him by virtue of this *survey,* and in as full and ample

a manner as the same was surveyed and returned to him, the said James M. De Bow, will warrant and forever defend."

At the argument there were two objections to the title thus attempted to be established by this deed.

The first was, that as the conveyance purported to convey only " reversions and a remainder " in the land, and there was no proof of the antecedent creation or existence of any estate in the property, whereby such reversion or remainder could have arisen, the grant is ineffectual and void. The theory was that, as far as appeared, the grantor attempted to convey an estate founded on a particular interest in the premises, which particular interest had, in point of fact, no existence.

But this contention, offered, as it plainly is, to the purpose and scope of the instrument when construed as a whole, has no basis even in the technicalities of the problem to be solved. Its fallacy lies in the fact that it has an eye only to a part of the granting clause of the deed. After the conveyance of the " reversions and remainder " of the premises, and the description of it, occurs, as has been already shown, these words of grant, to wit, " together with the houses, privileges," &c., " and all the estate, right, title, interest, property, claim and demand whatsoever, either in law or equity, the said ———, of, in and to the same." The adjective " same " here refers to the property and its appurtenances, so that the entire grant, embodied in the premises of the deed, in effect and expression is this, that the grantor conveys the " reversions and remainder," and all his interest, in law or equity, in or to the property, to the grantee. Therefore, even if we confine our attention to the granting words of this instrument, it seems very clear that the intention of the grantor was to transmit to the grantee whatever estate he had in these lands, and as the case shows that at the creation of the deed he was the owner in fee, such estate passed. As the proofs show, there is not the slightest ground for the conclusion that he was then either the reversioner or remainderman of this tract of land, and, looking to the whole of the premises, or granting clause of the deed, his purpose is clear to convey all the estate of which he

was seized or entitled to, and to clothe the grantee with the absolute fee, and that purpose cannot be thwarted or defeated by his mistake in calling it a reversion or remainder. In construing these deeds of bargain and sale, the court, unless controlled by the presence of plain and definite expression, will endeavor to carry into effect the design of the parties. Mr. Powell, in his *notes* to *Wood's Conveyancing*, says: "The law is curious and almost subtilizes to devise reasons and means to make assurances and deeds enure according to the just intent of parties, and to avoid wrong and injury, which, by abiding by rigid rules, may be wrought out of innocent acts."

If this principle of construction be resorted to in the present case, it is conceived that it is undeniably clear that this deed put in the grantees, from whom the defendant derives its title, the entire estate in the property.

Nor should it be overlooked that if the language of the granting clause of this indenture should be considered doubtful or ambiguous, then the language of the *habendum* becomes important, for the well-settled rule is that, if the granting part of the conveyance does not, by clear and definite terms, conclude the question, this clause, whose office is to define the extent of the ownership granted, may be resorted to. It may be used to explain, but not to vary or control the premises. If, consequently, the conclusion had been that the clause containing the effective force of the grant was uncertain as to its extent, for the reason that it first describes the interest to be passed as "reversions and remainder," and then designates it as all the right, title and interest of the grantor, which was an entire fee, was indefinite, such imperfection would have been deemed removed and amended by the explicit words of this *habendum*. This latter clause is according to the ordinary form, in these words, viz.: "To have and to hold the above-bargained premises, with the appurtenances, to the said party of the second part, their heirs and assigns, to the only proper use, benefit and behoof of the said party of the second part, their heirs and assigns, forever."

My conclusion on this branch of the subject is, that the deed in question conveyed the entire and absolute ownership in the property.

There are a multitude of cases illustrative of the topic, but it has not been considered necessary to refer to any of them, for the question has been tested by the application of general rules of construction universally admitted, and which can be found in any of the text-books.

But, further, it is to be observed that if this deed had been read in the sense in which it is construed by the counsel of the plaintiff, as plainly conveying nothing more than a reversion and remainder, it would still be a bar, irrespective of evidence, *aliunde* to the present action.

It will be remembered that the argument was that the grant was purely of reversions and a remainder; that the grantor was possessed of neither, and consequently the conveyance was a nullity.

But the difficulty is, that the plaintiff is not in a position to assume the truth of the second term of his syllogism. He cannot predicate that this grantor was not possessed of all these reversions and this remainder. It has been said that the plaintiff, as well as the defendant, claims under this same grantor, James M. De Bow.

It is one of the commonest of the legal rules that measure and define the force of conveyances, that a grantor, in order to defeat his grant, cannot allege that he was not possessed of the estate which his deed purports to convey. He is estopped from setting up or asserting such fact for such a purpose. In illustration of this rule, the case of *Jackson* v. *Bull,* 1 *Johns. Cas.* 90, may be referred to, in which it was held, in the language of the court, that "a man shall never be permitted to claim in opposition to his deed by alleging that he had no estate in the premises," and also the decision in *Jackson* v. *Murray,* 12 *Johns.* 201, in which the court said : "Russell (the grantor, having no good title, though he had a contract for one) cannot be allowed to say that his deed to Beach conveyed no interest."

It is plain, therefore, that, in the case before us, De Bow could not have set up against his grantees, under whom the defendant claims, that he did not own the reversions and the remainder that his deed undertook to convey ; and it is equally plain that the plaintiff, who makes his title under De Bow, cannot interpose such defence. "It may accordingly," says Mr. Washburn (2 *Washb. Real Prop.* 480), "be stated, as a general proposition, that any person claiming under one who is bound by an estoppel is himself bound by the same estoppel."

Nothing, consequently, can be clearer than that if this deed is to be interpreted as granting reversions and a remainder, that this plaintiff, as a privy in estate with the original grantor, cannot be permitted to deny that such original grantor was vested with the estate that he, according to the description of his deed, conveyed. In *Trevivan* v. *Lawrence et al.*, 1 *Salk.* 276, the doctrine is thus stated : "If a man makes a lease of indenture of D, in which he hath nothing, and after purchases D in fee, and after bargains and sells it to A and his heirs, A shall be bound by this estoppel ; and that where an estoppel works in the interest of the lands, it runs with the land into whose hands soever the land comes, and an eject-ment is maintainable upon the mere estoppel."

If, therefore, we concede the assumption of the argument in behalf of the plaintiff, that this deed conveyed nothing more than "reversions and a remainder," it is impossible for the plaintiff, standing as the privy of the maker of the deed, to deny in this suit that the grantor, at the time of the convey-ance, had vested in him those interests or estates in the land.

The consequence of this compelled concession is, that it puts the plaintiff out of court. This appears to us to be the inevitable result, for, granting that De Bow, when he made his deed, stood seized as reversioner or remainderman, it is obvious that either the present defendant, who holds his title, or the tenant of the particular estate, must be entitled to the present right of possession. If the particular estate has not expired, then the person in whom it is vested has such right,

and, if it be spent, then such right is in the defendant, under De Bow's conveyance of the reversions and remainder. And this elucidation disposes of the second contention of the counsel of the plaintiff, that the defence must fail if the court should conclude that the defendant is clothed, by force of the conveyance in question, with a reversion or remainder, on the ground that he has not shown the cessation of the particular estate, and consequently his right to immediate possession of the property is not exhibited. But this argument is misplaced, as it imposes on the defendant the necessity, in this action of ejectment, of manifesting his own right to the immediate possession of the premises, whereas, in truth, if he shows that such right resides in any person but the plaintiff, he is entitled to succeed in his defence. By the form of the deed from De Bow, the plaintiff claiming under him is obliged to admit that a reversion or remainder was passed, and on that concession it necessarily results that he himself cannot, if we regard only the intrinsic force of the deeds in question, be possessed of the present right of possession of the land in dispute.

It also seems to me that the covenant as to title contained in the deed just mentioned would, of itself, effectually prevent the original grantor and the defendant, as his privy by purchase, from contending that an absolute fee simple was not, by force of such instrument, vested in the grantees, and, consequently, in the defendant who has their title. This covenant is special, and is in these words: "And the said James M. De Bow, for himself, his heirs, executors and administrators, doth covenant, grant and agree, to and with the said party of the second part, their heirs and assigns, that the said James De Bow hath not done, or suffered to be done, any act, matter or thing whereby the premises hereby granted may be in any way charged or encumbered in title, charge or estate, and the same in the quiet and peaceable possession of the said party of the second part, their heirs and assigns, against the lawful claim and demand of all persons claiming under him, by virtue of this survey, *and in as full and ample*

*a manner as the same was surveyed and returned* to him, the said James M. De Bow, will warrant and forever defend."

Both parties claimed under the survey here described. It was in evidence, and its effect was to put De Bow in possession of the premises as tenant in fee simple, and it is that estate vested in his grantees that he covenants to defend. It will be observed that this warranty does not attach to the estate conveyed, but to the estate held by him under the survey of the proprietors, and that such estate comprehended the entire ownership of the property. In the face of such a special covenant as this, it is not perceived how either the grantor, De Bow, or any person taking by purchase under him, and standing on his title, can be permitted to contend that the estate conveyed is less than that which is warranted.

The general conclusion on this branch of the case is, that this deed from De Bow transmitted all the estate in these lands to which he was entitled at the time, which was an absolute fee simple.

There is another ground on which the plaintiff seeks to avoid the effect of this conveyance, and that is, that the conveyance was not recorded when the title under which he holds became vested. It is a conflict with respect to the right of a grantee holding under a junior conveyance, as against that of a grantee claiming title from the same grantor, by virtue of an elder but unrecorded deed.

Upon general principles the first deed would be paramount. The plaintiff, therefore, in order to avoid that result, must appeal to the statute of this state regulating the subject. It is to be found in the fourteenth section of the act respecting conveyances (*Rev., p.* 155), which provides that an unrecorded conveyance " shall be void and of no effect against a subsequent judgment creditor or *bona fide* purchaser or mortgagee for a valuable consideration, not having notice thereof, unless;" &c.

In order to postpone the second deed in this case, it was incumbent on the defendant to show that the plaintiff, and

those through whom he derived title, were not *bona fide* purchasers for value, without notice of his own prior conveyance.

The trial judge, thinking that the defendant was not successful in this respect, directed a verdict against him on this, as on the other issue above disposed of.

This ruling cannot be sustained. As to a part of the premises, we are of opinion that the plaintiff had no legal claim, or, at all events, the question should have been submitted to the jury.

The state of the title, as exhibited in the evidence, was this :

As has been stated, James M. De Bow was the original owner ; he made the deed, being the basis of the defendant's title, which has been above considered and disposed of; and, after De Bow had died, and the lapse of many years, one Jennings took a title to the premises from his heirs ; Jennings then conveyed to the plaintiff in this case under the following circumstances : he had sold for value three-fourths of an undivided interest in the land as follows—one to the plaintiff, Newell ; one to George Pfeiffer, and one to Charles T. Ridgeway ; the other quarter he retained, and he then conveyed the tracts to Newell in fee, upon trust, nevertheless, for himself and the other three named persons. Newell, the trustee, and Pfeiffer and Ridgeway, each had paid value for their shares respectively, and Jennings had paid value for the whole tract when he took it from De Bow's heirs.

If the case had rested on these facts alone, the title of the plaintiff would have been paramount to that of the defendant. But there was strong proof to induce the belief that at the time that Jennings acquired title from the heirs of De Bow, he was fully cognizant of the existence of the prior unrecorded deed. Upon the proofs, the jury might have well found that he was possessed of such knowledge. Admitting this, it is plain that the plaintiff had no title to one-fourth of the land that would be good in opposition to the prior deed. The title in the hand of Jennings could not prevail against the antecedent grant, though not recorded, because he was not a *bona fide*

purchaser without notice, and as he still remains the owner of one-fourth, such must be his legal *status* as to it. It was, indeed, argued that the court would not look beyond the title of Newell, the trustee, but this is an obvious fallacy, and which, if adopted, would defeat the right of action with respect to three-fourths of the property. As to three equal parts of the premises, the trustee has paid nothing whatever for such portions. So far as the shares of Pfeiffer and Ridgeway are concerned, to make the title good, the trustee must resort to the consideration paid respectively by them, and, with respect to his own one-quarter, to the payment made by himself. But the difficulty with the quarter claimed by Jennings, which he holds for him in trust, is, that the title to it was invalid when conveyed to him, and it was not cured of such invalidity by the transfer, as he, the trustee, paid nothing whatever for it. The statute declares that the later deed shall supersede the earlier one when there is a concurrence of two facts—*first, bona fides* in the subsequent grantee, and, *second*, the payment of a valuable consideration. The former of these essentials is lacking in Jennings with respect to this fourth of the land now under consideration, while the latter is lacking in the trustee.

It is obvious that, on the assumption of notice, and therefore *mala fides*, on the part of Jennings, and of non-payment of any consideration by the trustee, the latter cannot recover in this action this one undivided fourth part of the property. With regard to it the defendant's title is plainly paramount.

At the trial, and upon the argument in this court, it was insisted that the titles of Newell and his *cestuis que trust*, Ridgeway and Pfeiffer, rested on no better basis, as the facts in proof should have convinced any jury that these parties must have known of the title now held by the defendant, or, at the least, that such facts were sufficient to put them on inquiry. Such facts consisted of various uses made of this land, which was unenclosed, by the original grantors in the first deed, such as cutting timber from it in large quantities, taking gravel from a pit that was opened, and the use of a

small part of it as a burying ground. It does not seem to me that, with reference to this branch of the case, the testimony was either fully or very clearly developed at the trial, and as the case is to be tried again it would serve no useful purpose to discuss it. It is proper, however, to say that the plainest principles of public policy require, when notice or bad faith is sought to be imputed to a person who has taken a conveyance that is supreme so far as the books of registry are concerned, the proof should be so cogent as to leave no reasonable doubt on the subject. Such is understood to be the rule established by repeated adjudications in the courts of this state.

Let the judgment be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, KNAPP, MAGIE, VAN SYCKEL, BROWN, CLEMENT, WHITAKER. 9.