MELVILLE S. CONDIT et al., executors of Andrew B. Cobb, deceased,

*v.*

GEORGE BIGALOW et al.

[Filed February 3d, 1903.]

1. Testator devised the residue of his realty to four devisees, in equal shares, naming three of them as executors, and directing them to sell "all or any part" of such realty and divide the proceeds among the devisees. No sale was had, but a partition was effected by an exchange of conveyances, the deed to the share of one devisee being made by the executors to her husband.—*Held*, that the husband did not take an absolute title, on the theory of equitable conversion and reduction of the property to possession as personalty, as the discretionary character of the power of sale given the executors precluded equitable conversion.

2. Even had there been an equitable conversion, the partition amounted to a reconversion.

3. The conveyances made by the husband and wife, forming the consideration of that by the executors to the husband, and absolute title in the husband being inconsistent with the legal obligations of the parties, and recitals in a prior partition conveyance and in a chancery suit between the parties declaring that the husband took in right of his wife, a trust in the husband resulted to the wife and her heirs, subject to his tenancy by the curtesy.

4. A purchaser from a husband of land conveyed to the husband by the executors of his father-in-law in consideration of $1 and conveyances by the wife, the husband joining—the whole transaction constituting an exchange of conveyances to effect a partition of a devise to the executors and wife as tenants in common—is put on inquiry, by the recited consideration and notice that the husband's actual interest as tenant by the curtesy was derived from the father-in-law, as to a trust resulting to the wife in the land conveyed to him.

5. A partition of lands between tenants in common under a will was effected by an exchange of conveyances, the deed to one tenant's share being made to her husband. A prior chancery suit had been instituted by the husband and wife against the other tenants, who were also executors, the bill praying for a recovery of the wife's interest in the devise. A receiver was appointed to lease, collect the rents and divide the property, and the partition conveyance to the husband was acknowledged before the receiver. The suit was still pending by receiver in behalf of the wife's infant heirs at the time of a sale by the husband.—*Held*, to be notice to the purchaser that the husband's interest arose under the will; that he

Condit *v.* Bigalow.

had received the land in right of his wife, and that her heirs had succeeded to her interest; and this notwithstanding a ten years' delay by the husband in prosecuting the suit.

6. A recital in a deed executed by a trustee, in derogation of his trust, of the payment of the purchase-money, is not sufficient evidence of payment in behalf of the grantee's heirs, as against the *cestui que trust.*

7. In effecting partition of lands held in common one tenant conveyed by warranty deed to the husband of the other, and afterwards purchased the interest of the wife's heirs. In an action at law by such tenant against the husband's grantee estoppel by the tenant's warranty was pleaded, and decided adversely to defendant, judgment being given the tenant for a one-third interest, and he being remitted to equity for further relief.—*Held*, in the equitable suit thereupon instituted, that the judgment was *res judicata* on the issue of estoppel.

8. A grantor by warranty deed of lands impressed in the grantee's hands with a resulting trust is not estopped by his warranty from acquiring the interest of the *cestui que trust.*

9. On December 27th, 1838, a deed was made to a husband of realty impressed in his hands with a resulting trust in favor of his wife. The wife died in 1841. On May 4th, 1848, the husband conveyed. The wife's infant heirs came of age and conveyed their interests by deeds executed between February, 1855, and September, 1862. The husband died May 29th, 1884. In November, 1892, parties claiming under the wife's heirs brought ejectment against parties claiming under the husband's grantee, setting up an entire legal title to all the realty. They recovered a one-third interest, it being adjudged that, as to the balance, they had no title at law. On January 18th, 1895, suit was begun by them in equity.—*Held*, that the latter suit was not barred, the statute of limitations not beginning to run against the wife's heirs till the accrual to them of a right of entry on the husband's death, and the action at law being to enforce the same rights as the suit in equity.

Heard on bill, answer, replication and proofs.

*Mr. Mahlon Pitney,* for the complainants.

*Mr. John W. Harding,* for the defendants.

Emery, V. C.

The object of this bill is to establish a resulting trust in lands which were conveyed in fee to William C. H. Waddell, under whom defendants claim title. The complainants claim under the wife of Waddell, and allege that the conveyance to Waddell was made for the purpose of a partition or division between the devisees of one Lemuel Cobb, the father of Mrs. Waddell, of

some of the lands devised by him to Mrs. Waddell and others, and that the husband, on taking the conveyance of these lands in his name, must be held to have taken the conveyance as trustee for his wife. The legal title of the husband at the time of the conveyance was that of tenant by the curtesy initiate in the undivided interest (one-third) of the lands to which his wife was entitled. If the transaction in which the conveyance to the husband was made was, in fact, a partition or division by deed between the tenants in common of the fee, it is claimed that the deed should have been made to the wife, and that, if made to the husband, he will (for the interest therein beyond his life estate) hold the legal estate conveyed by the deed as trustee for the wife. That a trust results in favor of the wife is the settled rule where the wife's money or separate estate pays for land in which the husband takes title. *Lathrop* v. *Gilbert, 2 Stock. 344 (Chancellor Williamson, 1855)*; *City National Bank* v. *Hamilton, 7 Stew. Eq. 158 (Vice-Chancellor Van Fleet, 1881)*; *Irick* v. *Clement, 4 Dick. Ch. Rep. 590 (Errors and Appeals, 1892)*. And the same rule applies on a partition or division of lands where the wife, as one of the tenants in common, is entitled to the conveyance and her husband takes title to her share. *Weeks* v. *Haas, 3 Watts & S. 520; 39 Am. Dec. 39 (Chief-Justice Gibson, 1842)*; *Freem. Co-ten. & P.* § 406. On this branch of the case the defendants raise the question whether the transaction is to be treated as a partition among the devisees, and claim that, by reason of the directions of the will, it is not to be treated as a partition. The lands were part of the residue of Lemuel Cobb's estate, as to which his will was as follows:

"*Third.* I divide all the residue of my real and personal estate into four equal parts or shares, one share thereof I give and bequeath to Benjamin Howell, of Troy, the husband of my daughter Elizabeth; one other share I give and bequeath to Walter Kirkpatrick, nevertheless in trust for Eugene Kirkpatrick, the only son of my daughter Maria C. Kirkpatrick, one other share I give and bequeath to my daughter Julia Ann [Mrs. Waddell] and the remaining share I give and bequeath to my son Andrew B. Cobb—to have and to hold to each of them their heirs and assigns forever. I do hereby nominate, constitute and appoint my son Andrew B. Cobb, Walter Kirkpatrick and Benjamin Howell Executors to this my Testament and Last Will. I do hereby order and direct my executors hereinabove named or a majority or the survivor or survivors of them, to·

grant, bargain and sell all or any part of the residue of my estate called the third item & divide the moneys arising therefrom among the legatees therein mentioned."

It is claimed that this direction amounted to an equitable conversion of the residuary real estate, and that the partition of lands in question (which was the third partition between the devisees) should be considered in equity as a division of the proceeds of sale, and that the husband being, at the time of the partition (1838), absolutely entitled to the wife's personal estate, he should be considered as holding the lands as proceeds of sale and as the proceeds of his own money.

The doctrine of equitable conversion is a branch of the general equitable doctrine of trusts, and has been adopted solely for the purpose of executing trusts, and it is essential to the application of the doctrine of conversion that the property should be subject to a trust or imperative direction for conversion. Where, as in this case, there is no devise of the legal estate to the executors, and their control over the legal estate, which is vested in others, is solely that of a power of sale, the question is, whether it is a mere naked power of sale, the exercise of which must be discretionary, or whether it is a power in trust, the exercise of which is imperative. The execution of powers in trust may be required in equity for the benefit of the beneficiaries entitled, but when the trustee of the power is clothed with a discretion as to its execution, the court will not control the discretion. *Brown* v. *Higgs, 8 Ves. 561, 569 (1803)* ; *2 Pom. Eq. Jur.* § *1002,* and cases cited; *2 Story Eq. Jur.* § *1601.* And, in order to give rise to an equitable or constructive conversion, the direction to convert must be imperative and the conversion must not be left to the option of the donee or trustee. *Cook's Executor* v. *Cook's Administrator, 5 C. E. Gr. 375, 379 (Chancellor Żabriskie, 1869).* In this will there is, first, an absolute devise in fee of the legal estate to the devisees, then an appointment of executors, with a direction to sell following this appointment. The direction is not a direction to sell all his residuary estate, but all *or any,* and these words "or any" necessarily imply, as it seems to me, the power or option of selling or not selling some of the land, in their discretion. If the power be construed to be imperative,

it can only be upon the theory that all of the real estate must be sold by the executors. If as to *any* of the real estate the sale need not be made, then plainly an option as to conversion exists. Such option might be controlled by the court, in proper cases, for the benefit of the beneficiaries, but where an option or discretion to be exercised exists, the doctrine of constructive conversion is not applicable. Directions of most positive and imperative character would be required in this case to deprive the devisees of the legal estate of the right to retain the land as land, because the proceeds of sale, if any sale be made, are, by the will, to go to the devisees of the land. It is the more rational conclusion, therefore, that the testator, by vesting an immediate fee-simple in all his lands in his devisees, by virtue of which they were entitled to immediate possession and enjoyment of the lands upon his death, intended them to have the lands, subject only to a power of sale of any of the lands if the executors (being three of the four devisees) thought best for the estate to sell, and, if such sale were made, the devisees, and no other persons, should receive the proceeds. This construction of the power to sell as a discretionary, and not an imperative, power makes the will and every word of it operative, and harmonizes with its general plan.

Another reason why the doctrine of constructive conversion cannot be held effective in this case to convert the land into money is that, by the partition, an equitable reconversion, as it is called, took place. "By such reconversion the prior constructive conversion is annulled, and the converted property is restored in equity to its original actual quality." *3 Pom. Eq. Jur.* § *1175.* Mrs. Waddell and the legatees of the proceeds of sale joined in the series of releases and conveyances which released from the power of sale the shares of the lands devised to the trustees and to Mrs. Waddell. There is no question that her deed, in which her husband joined, had this effect, and that thereafter the lands conveyed to the trustees were freed from the operation of the power or trust. In consideration of the release to each of the other devisees Mrs. Waddell, was entitled to a release to herself of the remaining lands, and it must be presumed that the conveyance to the husband was intended to be for her benefit. The transaction cannot be considered as in any sense a sale to

Waddell by the executors as trustees, for, treated as a sale, it would have been a breach of duty in all three concerned to have given Waddell the absolute interest in the share of lands to which his wife was entitled in consideration of her conveyance to the executors themselves as individuals of the wife's interest in the other lands, which it was also their duty to sell for the common benefit of the devisees. The only view of the transaction consistent with an honest intention of the parties to protect the rights of Mrs. Waddell is that a partition between all the parties interested was intended, and that, by ignorance or oversight, the deed for Mrs. Waddell's share was made to her husband without declaring her right. In one of the former partitions the deed to Waddell did declare that the conveyance was made to him in right of his wife, and in the chancery suit, hereinafter referred to, the final decree made the same declaration as to the lands included in the partition now in question.

The contention of complainant that the deed to Waddell from the other devisees, for the interest in the lands to which his wife was entitled on a partition, is to be treated in equity as a payment to the husband of money to which he was entitled as his own under this will depends, it will be observed, upon the establishment (1) of an equitable constructive conversion of the lands into money by the will; (2) a constructive sale by the executors, and (3) a constructive reduction to possession of the purchase-money by the husband, all accomplished by a transaction which, on the face of it, was plainly intended to be a simple partition of lands, removing them from the operation of the power of sale. The doctrine of equitable conversion as between husband and wife, in relation to the proceeds of sale of her lands, is never held to be applicable unless a valid sale has in fact taken place. *Franks* v. *Bollans, L. R. 3 Ch. App. 717 (1868)*. It does not, in my judgment, extend to a case like this. So far, therefore, as Waddell, the husband, is concerned, and those claiming under him with notice, the land conveyed must be impressed with a resulting trust in favor of the wife and those claiming under her.

As to *notice*, I conclude upon the whole evidence in the case that John W. Bigalow, to whom Waddell conveyed the premises

in fee in 1848, after the death of his wife, had notice that the conveyance to his grantor was made upon a partition or division in which his grantor's wife furnished the consideration, the substantial facts which raise the trust. This notice he received by his own deed and the inquiries to which it necessarily led. The conveyances to the other devisees and tenants in common were referred to as the real consideration for the conveyance to Waddell, the other consideration, $1, being nominal. This statement of the consideration of itself suggested a partition or division so strongly as to put a purchaser on inquiry, and Bigalow was chargeable also with notice that the actual title which Waddell held and as to which his conveyance was altogether valid (that of a tenant by the curtesy in the lands) was derived from Lemuel Cobb. Mrs. Waddell had died in 1847, and the deed to Bigalow was made in 1848.

Notice to Bigalow was also given by chancery suit pending at the time of the purchase, brought in 1833 by Waddell and his wife against the executors, to assert their rights in the lands devised by Lemuel Cobb, the bill praying, among other things, that they might be let into possession of a fair and just share of the testator's real estate so devised to them by the residuary clause of the will, or that the executors or a master might be decreed to make a sale and that a receiver be appointed.

Walter Kirkpatrick was appointed receiver of the lands at the October Term, 1835, by an order in the cause which directed the receiver, among other things, to lease and collect the rents for the lands embraced in the residuary clause, and to divide the lands and personal estate among the persons in interest, according to their rights under the will of Lemuel Cobb. The receiver was directed to report his proceedings under the order to the court. The deed to Waddell made in December, 1838, and now in question, was executed and acknowledged before Walter Kirkpatrick, the receiver, who died subsequently and before the conveyance to Bigalow.

Mrs. Waddell died in 1841, and in February, 1848, the suit was revived in the name of her infant heirs as co-complainants. This revivor was prior to Bigalow's purchase (May 4th, 1848), and the suit was, in my judgment, notice to Bigalow at the time

of his purchase, that his grantor's interest in the lands in question arose under the will of Lemuel Cobb; that he had received the same on a division and in the right of his wife, and that the heirs of Mrs. Waddell had succeeded to the interest of their mother in the lands purchased from Waddell.

Mrs. Waddell died in 1841, within three years after the third partition of the lands made while the suit for accounting and division was pending. The suit was under the control of her husband, and as her children and heirs-at-law were infants, whose interests could not be impaired by a mere delay in the prosecution, I think the delay of the husband in the prosecution of the suit from 1838 to 1848 did not operate to deprive the suit of its effect as notice to persons claiming under the husband and adversely to the infant heirs of the wife.

Taking the entire circumstances of the case as disclosed by the paper-title of Waddell and the chancery suit at the time of the conveyance, there can be no reasonable doubt, I think, that Bigalow was put upon inquiry as to whether the title of Waddell, under this partition, was not held in trust for his wife. It should also be noted that Bigalow's actual payment of the purchase-money has not been proved. The burden of proving such payment is on the purchaser, and the recital of the payment in the deed is not, as against the *cestui que trust,* sufficient evidence of the payment. *1 Perry Trusts* § *219.* Defendants are volunteers claiming under Bigalow as his heirs-at-law, and they stand, therefore, in his position as to the claim of *bona fide* purchase.

A *third* question, that of alleged estoppel, arises under the following circumstances: Andrew B. Cobb, one of the executors and devisees under the will of Lemuel Cobb, and one of the tenants in common, joined in the execution of the deed to Waddell, and in this deed, which, on its face, granted an absolute fee in the land, Andrew B. Cobb covenanted (along with the other grantors) to warrant and defend the lands against himself and all persons claiming under him. Andrew B. Cobb subsequently (and between February 6th, 1855, and September 18th, 1862) purchased the title and interest of the children of Mrs. Waddell in the lands. He died in January, 1873, and the complainants, as his executors and devisees, are by this bill prosecuting his

rights acquired by the deed of Mrs. Waddell's heirs, subsequent to his own deed of warranty. The question is whether the subsequently acquired title of the grantor enures to the benefit of the grantee by reason of the warranty and by way of estoppel against the grantor.

In my judgment the doctrine of estoppel does not apply to this case, and for two reasons:

*First.* In an action at law brought by ·complainants against defendants to recover possession of the lands, in which action an undivided one-third interest was recovered, the same question as to estoppel under the deed was raised and was decided adversely to· the defendants in reference to the one-third interest. This decision settles, as between the parties, the law of this case in reference to the alleged estoppel in a court of law, and upon a purely legal question, such as estoppel, this court would follow the decision at law made in a suit between the same parties upon the effect· of the deed as an estoppel. And even were not the question thus *res adjudicata,* the opinion of Mr. Justice Magie, that under this deed there was no· estoppel at law, should be followed as an authoritative exposition of the law upon the subject under our decisions.

*Second.* The title now prosecuted is one claimed or derived originally under and from the grantee of the deed. The *cestuis que trust* claim under the grantee as their trustee in equity, and an equitable title so derived from a resulting trust imposed on the grantee by the circumstances of the conveyance is a title derived from the grantee as clearly as if the grantee had, upon the conveyance to him, executed a declaration of trust or a conveyance to· the beneficiaries. As to a title derived from the grantee himself, the doctrine of estoppel is even at law held not to be applicable. *11 Am. & Eng. Encycl. L. (2d ed.) 412.*

This is not a question of applying in equity (and as following the law) the legal doctrine of estoppel by warranty for the purpose of increasing the grantee's estate conveyed by the deed, but the fundamental question here is whether the conveyance of the legal estate was a conveyance in trust. If so, the controlling feature of the case is the enforcement of the equitable trust, and the general rule is that as against all except *bona fide* purchasers

the trust will be enforced, and inasmuch as the rights of the *cestuis que trust* are assignable, the trust will be enforced in favor of the assignees. The precise question, therefore, is whether the subsequent assignment by the *cestuis que trust* of their equitable rights to the grantor operates in favor of the trustee grantee because of the grantor's warranty. Estoppel by warranty is based on the fundamental principles of giving effect to the manifest intention of the grantors appearing on the deed, as to the lands or estate to be conveyed, and of preventing the grantor's derogating from or destroying his own grant by any subsequent act. *2 Sm. Lead. Cas. (8th ed.) 855, &c.; Van Rennselear* v. *Kearney, 11 How. 297; Staffordville Gravel Co.* v. *Newell, 24 Vr. 412 (Errors and Appeals, 1890)*; *Hannon* v. *Christopher, 7 Stew. Eq. 459 (Vice-Chancellor Van Fleet, 1881)*. The enforcement of the trust upon which the legal estate was conveyed to the grantee in this instance executes the entire purpose of the conveyance. The grantor, therefore, should no more be restricted by the doctrine of estoppel from fairly purchasing the *cestuis que trusts'* rights against the grantee, which arose from the conveyance and enforcing their rights, than he should be estopped by the warranty from directly aiding the beneficiaries against the trustee to have the trust declared, if the trustee repudiates the trust upon which the lands are conveyed.

That the legal title to the lands should be held by the husband in trust for the wife is the aspect in which a court of equity looks at the transaction as a whole, between all the parties, grantor, grantee and beneficiary. The enforcement of the trust in favor of the beneficiary against the grantee and those holding legal title under him with notice of the trust, is the controlling equitable aspect of the case, and the covenants of the grantor as to title and warranty cannot be made to operate by estoppel or otherwise to convey to the trustee any portion of the equitable interest or estates for which the legal title was, by the very circumstances and presumed intention of the conveyance, held in trust.

The remaining defence raised is that of laches in bringing the suit. It is claimed that the statute of limitations is a bar to the suit, and that even if this statute be not applicable, the delay is

a bar. The deed to Waddell was made on December 27th, 1838, and Mrs. Waddell died in 1841. Upon her death, Waddell became tenant by the curtesy, and on May 4th, 1848, conveyed the lands in question to John W. Bigalow. Mrs. Waddell's infant children and heirs-at-law came of age subsequently, and conveyances of their interests in the land were made to their uncle, Andrew B. Cobb, by several deeds executed between February, 1855, and September, 1862. Andrew B. Cobb died in January, 1873, and Waddell, the tenant by the curtesy, died May 29th, 1884.

The statutes of limitations do not expressly, or in terms, affect equitable suits, but courts of equity, in enforcing equitable rights or remedies, give effect to the statute. The extent to which effect is given to the statute depends somewhat on the nature of the equitable jurisdiction invoked. Where the suit is based on a legal right, and the appeal is to the auxiliary jurisdiction of this court, and equitable aid is sought for the purpose of removing the obstructions to complainant's legal right, a delay in the application for equitable aid will not, ordinarily, or in the absence of special equities, bar the equitable right, unless the legal right is barred. *Burne* v. *Partridge, 16 Dick. Ch. Rep. 434*, and cases cited at *pp. 436, 437*. Where the substantive right asserted is one as to which the jurisdiction in equity is concurrent with that at law, the statute of limitations is a bar in equity as well as at law. *Conover* v. *Conover, Sax. 403 (1831)* ; *Marsh* v. *Oliver, 1 McCart. 259 (Chancellor Green, 1862)*.

Where the right asserted or the remedy sought is purely equitable, the applicability of the statute depends to some extent upon the special character of the equitable right asserted or remedy sought. If the right claimed rests upon an express or direct and subsisting trust, clearly established, the statute of limitations is not held to be a bar, and such trust will be enforced unless there has been an express repudiation of the trust, and a holding adverse to the trust continued for the time fixed by the statute of limitations. *Allen* v. *Woolley, 1 Gr. Ch. 209 (1839)* ; *Starkey* v. *Fox, 7 Dick. Ch. Rep. 758 (Vice-Chancellor Green, 1894)* ; *affirmed on appeal, 8 Dick. Ch. Rep. 239; Stimis* v. *Stimis, 9 Dick. Ch. Rep. 17 (Chancellor McGill, 1895)*, and cases cited at *p. 21*.

If the jurisdiction is for the application of remedies purely equitable, such as specific performance, cancellation of instruments and the like, the period of delay which will be fatal does not depend upon the statute of limitations, but will be considered and determined with reference mainly to the circumstances and effect of the delay in the particular case, and the suit may be dismissed for delay less than the period fixed by the statute limiting the pursuit of legal remedies. The general equitable rule applicable to this class of cases is that which requires vigilance in the prosecution of rights. A late case in the court of errors and appeals—*Lutjen* v. *Lutjen, 53 Atl. Rep. 625 (November, 1902)*—collects and reviews our decisions illustrating the application of the doctrine of laches in cases of this character. The bill in this case was filed to set aside the release of a legacy given to an administratrix upon the ground of fraud, and, under the circumstances, a delay of nine years and eight months was held fatal.

In cases of equitable titles to real estate courts of equity will apply the period of limitation of the legal estates of an analogous character. *2 Story Eq. Jur. § 1520.* Where the trust is an implied or constructive trust the statute is applicable (*McLane* v. *Shepard, 6 C. E. Gr. 76*), and where, by reason of an implied trust, a court of equity declares equitable estates to exist equity follows the law in applying the bar of the statute to the equitable estates so created. *Hoveden* v. *Lord Annesley, 2 Sch. & L. 607,* at *pp. 611, 632, 637 (Lord Redesdale, 1805),* is the leading case upon the application of the statute to equitable estates. *Hall* v. *Otterson, 7 Dick. Ch. Rep. 522,* and cases cited at *p. 533 (Vice-Chancellor Green, 1894),* for the rule that a *cestui que trust* whose equitable interest is reversionary is not bound to assert his title until it comes into possession. *Thompson* v. *Simpson, 1 Dr. & War. 489; Life Association, &c.,* v. *Siddal, 3 De G. F. & J. 58; 2 Perry Trusts § 860.*

The present case is one where an implied or constructive trust is alleged and has been sufficiently proved. The trust arises from the payment of the purchase-money of land, and in equity this trust is made effective by holding that equitable interests or estates in the land, proportionate to, or dependent on, the pro-

portion of the purchase-money paid, are created, or, in technical language, result from the payment. In the present case an equitable estate in fee in Mrs. Waddell, subject to her husband's tenancy by the curtesy, resulted, by operation of law, from her ownership subject to this right. During the continuance of the marriage the statute of limitations did not run in equity against the wife and in favor of her husband (*Yoemans* v. *Petty, 13 Stew. Eq. 495; Alpaugh* v. *Wilson, 7 Dick. Ch. Rep. 424; affirmed on appeal, 7 Dick. Ch. Rep. 589*), and after the death of the wife the statute did not run against the children until they arrived at age. The tenancy by the curtesy did not expire until Waddell's death, in 1884. In November, 1892, the complainants brought suit in ejectment against the defendants to recover possession of lands now in dispute, claiming the entire legal title to all of the lands. In that suit it was decided that the plaintiffs were entitled to recover the equal undivided one-third part, but that as to the other two-thirds they had no title at law. Final judgment was entered in this action in February, 1894, and the present bill was filed January 18th, 1895. The applicability of the statute depends on the question whether this suit is to be considered as substantially one where the object is to establish and enforce an equitable estate or interest in land. If it is, then, following the analogy of the statute of limitations applicable to legal estates, the action is not barred until the right of entry would have been lost on a legal title. Such right of entry accrued on the death of the tenant for life. *Pickney* v. *Burrage, 2 Vr. 21.* In my opinion the suit is essentially a suit to declare the equitable estate which arose out of, and resulted from, the payment of the purchase-money of the conveyance, and to give to the *cestuis que trust* the enjoyment of these estates in the same manner and to the same extent they would have been entitled to the enjoyment of the legal estate had the legal title been made to Mrs. Waddell, who paid the consideration. The statute should not be applied or begin to run against Mrs. Waddell's heirs or their grantee until after the termination of the life estate of her husband. This relief from the operation of the statute against Mrs. Waddell and those claiming under her from 1838 to the death of the tenant by the curtesy, in 1884, is the

exact situation which the transaction would have assumed had the conveyance of the legal title been made in 1838 to Mrs. Waddell, as it should have been, and neither Waddell nor those claiming under him in this case have shown any special equitable circumstances which entitle them to call upon this court to make the equitable titles or interests in the land in question less extensive than the legal title would have been had it been properly made.

I will advise a decree for complainants.