### CHIDESTER et al. v. CITY OF NEWARK et al.

### No. L–5568.

District Court, D. New Jersey.
March 15, 1940.

George T. Vickers, of Jersey City, N. J. (William E. Clark, of Newark, N. J., of counsel), for plaintiffs.

James F. X. O'Brien, of Newark, N. J., for defendant City of Newark.

William H. Speer, of Newark, N. J. (Thomas M. Kane, of Newark, N. J., of counsel), for defendant Public Service Coordinated Transport, Inc.

FAKE, District Judge.

This is an ejectment suit. Pursuant to written stipulation the issues involved are

to be tried before the Court without a jury. Counsel have further stipulated that pending the taking of testimony and for the purpose of clarifying the issues which may be raised at the trial, a question bearing upon the construction of the deeds which lie at the base of the suit be first disposed of.

One James Searing made three certain deeds to the Morris Canal and Banking Company. The first is dated January 11, 1830, the second, March 28, 1833, and the third, March 1, 1856. The immediate question is whether the lands described in said deeds have reverted to the heirs and assigns of the grantor Searing by virtue of the abandonment of their use for canal purposes.

The issue raised is a nice one and in passing upon it, it becomes necessary to follow closely the language of the deeds. The deed of 1830 recites that: "Whereas, by virtue of an Act of the Legislature of the State of New Jersey, entitled, 'An Act to Incorporate a Company to form and artificial navigation between the Passaic and Delaware Rivers' The Morris Canal and Banking Company are authorized to construct and make a Canal, or artificial navigation, to connect the waters of the Delaware River near Easton, with the tide waters of the Passaic, and to take, occupy, possess and enjoy all such lands as may be necessary and proper to be taken and occupied by them for the said Canal, and its necessary locks, towing paths, toll houses, offices, works and devices; and whereas, the said Canal is laid across certain lands, lying in the township of Newark in the County of Essex now belonging to James Searing of the township Newark aforesaid. Now, be it known that I the said James Searing in consideration of the sum of One dollar lawful money of the United States to me in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, and for other considerations me thereunto moving, do hereby give grant, bargain and sell, assign and convey to the said, The Morris Canal and Banking Company, their successors and assigns, all the said lands necessary and proper to be taken and occupied by them for the purposes aforesaid, Provided the lands so taken and occupied shall not exceed one and an half acres, for the said Canal Lock and other works and devices. To have and to hold the said lands and premises to the said The Morris Canal and Banking Company, their successors and assigns, so long as the same shall be used for the purposes for which the Morris Canal and Banking Company have power to use the same by the true intent and meaning of the said Act." 

By the granting clause of the above deed it would appear that the Canal Company took a fee simple absolute by which is meant an estate not subject to a special limitation or a condition subsequent or an executory limitation. See Restatement of the Law of Property, sec. 15, page 42. It should be noted, however, that the recital is referred to and read into the description of the property by the words "for the purposes aforesaid." This phrase leads to the following "aforesaid" purposes: "such lands as may be necessary and proper to be taken and occupied by them for the said Canal" etc. This does not in my opinion limit or place a condition on the estate granted but refers only to the statutory restriction placed upon the Canal Company prohibiting it from taking land not necessary for canal purposes. In other words, it refers to the quantum of the estate and not to the tenure. This point is not specifically raised by the briefs on either side. It is mentioned only to the end that nothing may be overlooked which may have a bearing on the granting clause of the deed.

Passing now to the habendum clause and assuming for present purposes that if it has any effect, its language would create a defeasible estate in fee in the Canal Company with reversion to the heirs of the grantor Searing, on abandonment of the canal, we look to the law on the subject noting that we are dealing with a question of title under the law of New Jersey and as it was when the deed was delivered. In this connection attention is directed to Havens et al. v. Sea-Shore Land Co., 47 N.J.Eq. 365, 20 A. 497, 499, wherein Vice Chancellor Van Fleet held: "Where the granting clause of a deed is silent as to the estate intended to be conveyed, resort may be had to the habendum to ascertain the intention of the grantor in that regard. It cannot be used either to enlarge or diminish the estate specifically defined in the granting clause, for if it is repugnant to that clause it is void; but, if that clause is either silent or ambiguous, then the habendum becomes the standard by which the estate granted must be measured." See

the opinion in Sellick v. Jersey Central Power & Light Co. to the same effect, handed down January 25, 1940, 124 N.J.L. 110, 11 A.2d 137.

In Staffordville Gravel Co. v. Newell, 53 N.J.L. 412, 19 A. 209, 210, Chief Justice Beasley, in referring to the habendum clause, said: "It may be used to explain, but not to vary or control, the premises." By the use of the word "premises", the Chief Justice apparently had in mind all that part of the deed which precedes the habendum. See Washburn on Real Property, 3rd Edition, page 371, paragraph 59, and Blackstone, Book II, Ch. XX, page 298.

Kent in his Commentaries, vol. 4, page 468, says of the habendum: "This part of the deed was originally used to determine the interest granted, or to lessen, enlarge, explain, or qualify the premises. But it cannot perform the office of devesting an estate already vested by the deed; for it is void if it be repugnant to the estate granted. It has degenerated into a mere useless form; * * * the deed becomes effectual without any habendum."

■ In the deed now before us, the granting clause is by no means silent, nor is there any ambiguity in it. Clearly by its words it passes a fee simple absolute and by virtue of the law above cited, the habendum clause is wholly without effect to limit the estate. The contention made to the contrary by the plaintiffs must fall.

■ The Searing deed of 1833 is an out and out bargain and sale deed. It contains no conditions or limitations of any kind whatsoever. So no contention can be made that it passes anything less than an estate in fee simple absolute.

Taking up now the final deed dated 1856, James Searing and Elizabeth his wife appear therein as grantors. The deed is one of bargain and sale with a covenant against grantors. The printer of the form upon which it is drawn entitles it a "Deed of Bargain and Sale with Quit-Claim clause". Just why it is so entitled is not clear, since the words of bargain and sale include all that might be involved in a quit-claim deed. There can be no question however but that a fee simple absolute passed by the words of conveyance of the granting clause.

Then follows a mete and bound description of the lands and at the end thereof the following: "Reserving and excepting so much of Warren Street as is included in the above description—and the above description embraces two tracts heretofore conveyed by the said James Searing to the party of the Second part by deeds dated January 11, 1830 and March 28, 1833. The above tract of land is the same now occupied by said Morris Canal, and is hereby conveyed subject to the condition that if the said canal shall be changed in its location, and the said land shall cease to be used for a Canal then the said land shall revert to said James Searing his heirs and assigns." The habendum also reads in fee simple absolute, so no conflict appears between it and the granting clause.

■ Again assuming for present purposes that the language appearing at the end of the mete and bound description might be given effect to limit the estate to a defeasible fee if the same has any effect whatever. This difficulty appears: The grantor had no title whatever in the lands described in this deed. He had completely divested himself of all title therein by his deeds of 1830 and 1833. It follows that being thus divested of the whole he had nothing upon which to impress conditions or limitations as here attempted. This deed of 1856 was in all probability given to amplify the description in the prior deeds and to obtain the wife's release of dower.

■ My conclusion is that plaintiffs have no reversionary rights in the premises in question. In arriving at this conclusion I am not unmindful that the rules of construction which have been here applied are at variance with those applied in certain other jurisdictions. See 84 A.L.R. 1063, and 1073. But where the title to land is involved, it has always been the rule in the Federal Courts to follow the law of the State wherein the land is situated. This is now further emphasized by the rule laid down in Erie R. Co. v. Tompkins, 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A. L.R. 1487.

An order may be entered in conformity herewith.