Kirkpatrick v. Corning.

ANDREW KIRKPATRICK, receiver &c.,

*v.*

ERASTUS CORNING et al.

1. Courts of equity may, on motion, strike out all matter in pleadings that is irrelevant and calculated to hinder, delay and embarrass the cause after decree on general demurrer.

2. If the alleged objectionable parts of a bill of complaint have a tendency, or would be admissible in evidence to show the truth of any allegation in the bill that is material with reference to the relief prayed, they will not be stricken out.

3. The allegations of fraud in this bill, consisting of successive acts, depending on each other, implicating the parties benefited by the decree and sale of real and personal property, and affecting the assets of an unsettled partnership, will not be stricken out on motion of defendants benefited by such sale.

On appeal from an order of the chancellor, whose opinion is reported in *Kirkpatrick* v. *Corning, 12 Stew. Eq. 22.*

*Mr. F. W. Stevens, Mr. Theodore W. Dwight* and *Mr. Cortlandt Parker,* for appellants.

Kirkpatrick v. Corning.

The court below in this case erred on two principal grounds : First, in ordering portions of the complaint to be stricken out on the merits, and second, as mistating the regular rules of practice.

Following this view, the argument of the appeal naturally is divided into two principal divisions :

*Division I.*—The error of the court on the merits of the order.

*Division II.*—Error in practice.

*Division I.—Point 1.*—The court erred in not taking into account that the complaint discloses a plain breach and violation of trust by James Ludlum, surviving partner and receiver, in a series of acts commencing before the foreclosure and extending long after it, of all of which the co-defendant, Corning, was cognizant, and in all of which he participated, and which were in the highest degree inequitable and unjust towards the heirs of Mr. Horner. Mr. Corning had the benefit of these acts, and did not disown them. The leading breaches of trust were these :

(1) Failing, as surviving partner and receiver, to set up usury in his dealings with the Corning mortgage. This occurred before the decree of foreclosure.

(2) Selling the personal property of the partnership at a most inadequate price, and acting as agent for Corning in buying it, which, on general principles of trust law, he had no right to do. By this means, only a small portion of the debt secured by the mortgage debt was paid. This happened before the foreclosure sale.

(3) Obtaining a renewal of a lease belonging to the partnership in the name of Ludlum's wife, in plain violation of his trust obligations, and so decided by this court.

*First.* The act of failing to make use of the defence of usury in the foreclosure suit was a plain breach of trust. Ludlum was bound, as receiver, to set it up.

This question has often come up in bankruptcy, and it has been held that the usurious creditor has no claim against the estate of the bankrupt. *Ex parte Linbun, 3 Ves. & B. 14; Ex*

Kirkpatrick *v.* Corning.

*parte Skip, 2 Ves. 489 ; Benfield* v. *Solomon, 9 Ves. 89 ; Ex parte Thompson, 1 Atk. 125 ; Ex parte Bunghay, 1 Rose 168.*

The assignees should bring the subject-matter before the court. *Leecher* v. *Varden, 2 Coll. 62 ; S. C., 9 Jur. 546.*

For other illegal contracts which cannot be proved, see *Ex parte Daniels, 14 Ves. 191 ; Ex parte Bell, 1 M. & S. 571 ; Ex parte Dyster, 2 Rose 256 ; Ex parte Schmaling, Buck 93 ; Ex parte Boussmater, 13 Ves. 71.*

The right to recover back money usuriously paid belongs to a receiver. *Palen* v. *Bushnell, 46 Barb. 21–24.*

A receiver has, in general, no discretion in the application of funds in his hands by virtue of his receivership, but holds them strictly subject to the order of the court, and should, in his management, ask for directions. *High on Receivers §§ 178, 188 ; Johnson* v. *Gunter, 6 Bush 534 ; Cammack* v. *Johnson, 1 Gr. Ch. 163.*

Receivers cannot waive any technical legal defence or abandon an equitable one. *McEvers* v. *Lawrence, 1 Hoff. Ch. 172, 175 ; Atty.-Gen.* v. *Life and Fire Ins. Co., 4 Paige 224.*

It is apparent that Ludlum, as receiver, in failing to redeem and to insist on the deduction of the bonus and usurious interest, was not only violating his general trust as receiver, but was disobeying the order of the court. He did not pay the debts as he was directed, but permitted the very valuable real estate of the firm to be sacrificed, by a positive act of disobedience to the order of the court, whose officer he was.

What was this but a flagrant instance of contempt of court?

These acts are amply sufficient to justify an original bill on the part of the present receiver to open the decree of foreclosure, and redeem from the Corning mortgages. See *Missouri Pacific Railway Co.* v. *Pacific Railroad of Missouri, 111 U. S. 505.*

In this great case, a foreclosure of a railroad having taken place through the unfaithful conduct of the solicitor and directors of the defendant, the court held that an original bill to redeem would lie on behalf of the company.

The principles governing the subject are thoroughly discussed

in *United States* v. *Throckmorton, 98 U. S. 65–69 ; Covington and Lexington R. R. Co.* v. *Bowler, 9 Bush 468.*

*Second.* The next stage in the series of unfaithful acts practiced by the receiver in conjunction with the mortgagee is the sacrifice of the personal property by a sale in violation of the elementary principles of the law of trusts.

The bill distinctly shows the fraud in this branch of the subject.

The court ordered that in case of a public or private sale of any of the partnership effects * * * the receiver should give due notice to Mrs. Buckingham, that she might have full opportunity of bidding for the same, and that in case of public auction the receiver, notwithstanding his position as trustee, might, in person or by his agent, bid at the sale, and buy in the property in his own name, but such purchase should not be carried into effect without the sanction and order of the court.

This order seems to have been framed so as to allow each party to protect his or her own individual interests. The receiver was not to be prevented from doing this because he was trustee. At the same time if he did actually bid and buy under that permission and order, he would still, as to Mrs. Buckingham and Susan Horner, be a trustee. *Torrey* v. *Bank of Orleans, 9 Paige 661 ; Fulton* v. *Whitney, 66 N. Y. 548 ; Bennett* v. *Austin, 81 N. Y. 327.*

*Third.* The third and crowning act was the artifice and fraud whereby Ludlum, in co-operation with Corning, converted a water lease belonging to the partnership to their own individual use.

This act has already received the condemnation of the court in a decision upon the demurrer to this complaint. *Kirkpatrick* v. *Corning, 11 Stew. Eq. 234.*

Mr. Corning cannot escape the responsibility for these acts. He was not, it is true, actively engaged in them. He was, however, passively. Ludlum was his facile tool and instrument. Corning cannot profit by Ludlum's frauds—knowingly accept the benefit of them and escape responsibility. There is but one rule for a person placed as he was. He must either disavow

frauds and fiduciary misconduct of others, by which he profits, or else accept them *cum onere*, with all their burdens and liabilities.

This is a rule of common honesty as well as of law, and Mr. Corning cannot complain if it is fully applied to him. *1 Pars. on Contracts (7th ed.) 74; National Ins. Co.* v.`Minch, 5 T. & C. 545; Irving* v. *Motley, 7 Bing. 543; Doe* v. *Martin, 4 T. R. 39, 66.*

*Division I.—Point 2.*—Assuming it to have been established that there is an inequitable element in the foreclosure of this mortgage, we next say that it is within both the jurisdiction and practice of courts of equity to open the foreclosure and allow the mortgagor to redeem, and that the remedy is not confined to a mere order setting aside the sale and leaving the foreclosure decree remaining.

*First.* It is a general rule of law that a court has power over its judgments or decrees, so that they shall not be made instruments of fraud or oppression. The end to be attained by a decree is justice. If one of the parties uses it as an instrument of injustice, the fundamental thought underlying a decree is subverted. When the attention of the court is called to the miscarriage of justice, it will be swift to rectify it, either on motion to set aside the judgment or by some independent proceeding.

*Second.* The principles of equity jurisprudence lead still more emphatically to the same conclusion. There present themselves before a court of equity still broader questions of surprise, accident, mistake and oppression as leading the court to open a judgment where the rights of purchasers for valuable consideration and without notice are not involved. No such rights can be pretended to exist here, as everything done by Ludlum was known to Corning. He was in fact privy to it and participated in it. Accordingly, if there was anything inequitable in this proceeding which would justify opening the judgment as to any person whatever, it would be justified as to him. *United States* v. *Throckmorton, 98 U. S. 61–65.*

*Third.* The facts of the present case contain an inequitable

Kirkpatrick v. Corning.

element of such a character as to justify the opening of the decree and allowing a full restatement of the accounts between the parties. This proposition is fully sustained by the adjudications. *Lloyd* v. *Mansell*, *2 P. Wms. 73; Hawley* v. *Tebbett, 1 J. & W. 197; Morley* v. *Elway, 1 Ch. Cas. 107; Gore* v. *Stackpoole, 1 Dow 118; Cain* v. *Gimon, 36 Ala. 168; Weiss* v. *Alling, 34 Conn. 60; Loomer* v. *Wheelwright, 3 Sandf. Ch. 136; Grover* v. *Fox, 36 Mich. 461; Fosdick* v. *Van Husan, 21 Mich. 507.*

*Fourth.* The right of redemption, by original bill where it exists, may be exercised as well in favor of the heirs of the mortgagor as by the mortgagor himself. *Loomer* v. *Wheelwright, supra; Bank of Albion* v. *Burns, 46 N. Y. 175; Smith* v. *Townsend, 25 Id. 479.*

*Division I.—Point 3.*—It is necessary on additional grounds that the court should have regarded this proceeding as a redemption, not from a sale merely, but for an unforeclosed mortgage.

*First.* If the plaintiffs have shown, as they insist that they have, that the bonus and usurious interest must be allowed them to the amount of say $20,000, it would appear to be essential that the decree should be opened for the purpose of having the necessary deductions made.

*Second.* The value of the personal property sold, as the bill claims, at a sacrifice, could only be ascertained as the result of a judicial inquiry before a master in chancery, as apparently much detailed evidence would be necessary. It is not perceived in what other way justice could be done to either party. How could the value be ascertained and applied by order of the court in any other way? If this be correct, the whole account, as it stands, must be opened to have the proper application made.

*Third.* The question of the effect of a mortgagee in possession remaining in possession after a foreclosure decree, as bearing upon the opening of the accounts in a suit to redeem, is well settled. There must be a new reference to compute the accounts. *Garlick* v. *Johnson, 4 Beav. 154; Ellis* v. *Griffiths, 7 Id. 83; Alden* v. *Foster, 5 Id. 592; Buchanan* v. *Greenway, 12 Id. 355.*

This rule must go upon the ground that, until foreclosed, a

mortgagee in possession must be regarded as a trustee. He is accordingly obliged to account to the mortgagor for the rents received in that character between the day of the decree and the day of sale. *Whalin* v. *While, 25 N. Y. 462.*

*Fourth.* The assignment of the Schuyler water lease or its equivalent in money can only be obtained by opening the foreclosure and having a decree granting relief analogous to that given in *Loomer* v. *Wheelwright, supra.*

It is scarcely necessary to fortify these general positions by reference to authorities, as the subject is elementary. The true relations of a trustee, and his duties to his *cestui que trust,* are developed in *Keech* v. *Sanford, Sel. Cas. in Ch. 61 ; Holt* v. *Holt, 1 Ch. Cas. 191 ; 1 Lead. Cas. in Eq. 91, 93 ; Davoue* v. *Fanning, 2 Johns. Ch. 252 ; Warner* v. *Blakeman, 4 Abb. App. Cas. 530 ; S. C., 4 Keyes 487 ; Tompkins* v. *Tompkins, 3 Stock. 574.*

*Division I.—Point 4.*—There is one aspect of the case peculiarly applicable to the defendant Corning and his own conduct (independent of the action of Ludlum), which justifies and more than this, demands the opening of this decree of foreclosure, and charging him with the results of his own conduct as trustee.

*First.* As soon as the court disposed of the case of *Kirkpatrick* v. *Corning,* as presented in *11 Stew. Eq. 234,* Corning, in all the interval between the illegal sale and the present time, became a mortgagee in possession. In this view it is immaterial whether this court intended merely to set aside the sale or to open the foreclosure. The act of going into possession under an illegal sale does not make the mortgagee a purchaser of the land. He is still a mortgagee, nothing more, nothing less, with the added fact that he is in possession.

*Second.* As mortgagee in possession, he is trustee for the mortgagor, and can take no adverse position to the latter, and must account in equity for all that he has received by his position.

*Third.* The case shows that Mr. Corning, through his instrument, the Pompton Steel Company &c., made use of the Schuyler water lease from the time of the pretended sale down to the time of filing the bill. Though the title to the lease was nominally

in Mrs. Ludlum, he used it in the business carried on upon the foreclosed property.

The new lease was a graft upon the old lease, and was impressed with the same trusts. *Mitchell* v. *Reed, 61 N. Y. 123, 136 ; Holdridge* v. *Gillespie, 2 Johns. Ch. 30 ; Phyfe* v. *Wardell, 5 Paige 268.*

He is to be charged with the full value of all that he received, or might, with reasonable diligence, have received during his possession. *2 Washb. on Real Prop. (4th ed.) 223, 224 ; Gordon* v. *Lewis, 2 Sumn. 143 ; Holabird* v. *Burr, 17 Conn. 556 ; Trimleston* v. *Hamill, 1 Ball & B. 379, 385.*

*Fourth.* It is well settled that in the case of foreclosure accompanied by a sale, the owner of the equity of redemption is entitled to the rents which become due down to the period when the purchaser, under the decree of sale, becomes entitled to the possession of the land, which right accrues upon the production to the occupant of the premises of the master's or sheriff's deed, and a certified order confirming the report of sale after it has become absolute. *Clason* v. *Corley, 5 Sandf. 447 ;* approved and followed in *Whalin* v. *White, 25 N. Y. 462, 466 ; Astor* v. *Turner, 11 Paige 436.*

The bid at the sale, acceptance by the master, and payment of the usual ten per cent. deposit, work no change of title, even in equity. *Strong* v. *Dollmer, 2 Sandf. 444.*

*Division I.—Point 5.*—The decision in *Kirkpatrick* v. *Corning, 11 Stew. Eq. 234,* must be read in the light of the foregoing discussion. It is in every respect favorable to the theory of the plaintiff.

The 'word "redeem," as used by the court, is a word of technical meaning. It is used here actively as an affirmative step taken by the mortgagor. The only known way of proceeding affirmatively is by bill for redemption brought by the mortgagor or his representatives. It presupposes that there is no valid decree of foreclosure. It is a settled rule that if the bill is dismissed on the merits, this dismissal amounts to a foreclosure. It would be absurd to say this, if there were already a valid

decree of foreclosure. *Fisher on Mortgages* §§ *107, 1234; Bishop of Winchester* v. *Paine, 11 Ves. 199 ; Inman* v. *Wearing, 3 De G. & S. 734 ; Goodwin* v. *Curtis, 23 Mich. 506.*

The distinction between an original bill to redeem and a proceeding to set aside a sale is brought out with distinctness in *Brown* v. *Frost, 10 Paige 243.*

The contrast between the two is also well shown in *Fritz* v. *Simpson, 7 Stew. Eq. 436,* which was a bill to redeem, and *N. J. Sinking Fund Commissioners* v. *Peter, 5 Stew. Eq. 113,* which was a proceeding to set aside a sale under a foreclosure decree.

Every bill filed to cancel a mortgage past due, and which the plaintiff's adversary is seeking to foreclose, is a bill for redemption. *Goodwin* v. *Curtis, 33 Mich. 505.*

It is laid down in many cases that the right to "redeem" and to "foreclose" are reciprocal and commensurable. Where there is a right of redemption there is as yet no foreclosure; where there is a valid foreclosure there is no redemption remaining. *Caufman* v. *Sayre, 2 B. Mon. 206 ; Koch* v. *Briggs, 14 Cal. 256 ; King* v. *Meighers, 20 Minn. 267 ; Parsons* v. *Noggle, 23 Minn. 231.*

*Division I.—Point 6.*—The court below erroneously construed the opinion of this court in *Kirkpatrick* v. *Corning, 11 Stew. Eq. 234,* while asserting that it was opposed to the plaintiff's claim.

*First.* There is nothing in the theory advanced by the defendant, and sustained by the court below, that because this court adverted to a single element of fraud in the case of *Kirkpatrick* v. *Corning, 11 Stew. Eq. 249,* it intended to exclude all others.

*Second.* This court, in its decision, proceeded in exact accordance with the law on the subject of general demurrers (such as was interposed in this case) for want of equity.

The rule is, that where a bill in equity sets forth various claims, and the defendant files a general demurrer, the demurrer will be overruled if any of the claims be proper for the jurisdiction of the court of equity. *Castleman* v. *Veitch, 3 Rand. 598 ; Kimberly* v. *Selis, 3 Johns. Ch. 467 ; Graves* v. *Downey, 3 Mon. 356 ; 1 Dan. Ch. Pr. (3d Am. ed.) 573.*

*Division II.—Point 1.*—The practice pursued by the court below in this case is not correct, and should not be followed.

*First.* A motion to strike out matter from pleadings for immateriality leads to unprofitable discussion and delay, and should not be resorted to except in highly meritorious cases. *Woods* v. *Morrell, 1 Johns. Ch. 105.*

*Second.* In order that matter may be stricken out from a pleading it must appear that it can have no influence on the decision of the suit either as to the subject-matter of the controversy, the particular relief to be given, or as to the costs. *Van Renssalaer* v. *Brice, 4 Paige 174.*

*Third.* This motion falls within the mischief intended to be prevented by the Revised Statutes of New Jersey. *Rev. 108, 109 § 31.*

It is there laid down that if the plea or demurrer be overruled, no other plea or demurrer shall be thereafter received, but the defendant shall file his answer in forty days after overruling the demurrer, and if he fail to do so, the bill shall be taken as confessed.

This act should have a liberal interpretation, to meet the evils growing out of these dilatory motions, as it is plain that if the matter merely fails to be pertinent, it is surplusage and can do no harm, except where it is reproachful and scandalous.

*Fourth.* The cases cited by the chancellor are not apposite, as they were decided prior to the statute, and, of course, do not construe it.

*Fifth.* The two hundred and fifteenth rule of the court of chancery of New Jersey does not affect the question now under consideration adversely to the plaintiff, but is conclusively in his favor.

This provides, in substance, that an objection to a bill may be made on motion, without a demurrer or exception, but the notice of motion must state the grounds of the objection. Such a motion will be deemed a waiver of the right to demur, or to except.

*Sixth.* The facts of the present case show the solid objections that may be urged to this scheme for delay.

(1) Horner died more than ten years ago, and Ludlum became surviving partner, with the title to the estate as trustee.

(2) He was so unfaithful to his trust as partner that Mrs. Buckingham applied for a receiver, and, in spite of her remonstrances, Ludlum was appointed.

(3) As receiver, his conduct was so unfaithful toward the large trust imposed upon him that he was removed July 31st, 1879, and the present receiver appointed in his stead.

(4) The plaintiff, receiver, filed his bill against Ludlum and his confederate, alleging frauds of a glaring character. A demurrer for want of equity was sustained by the court of chancery, but this decision was reversed, and the defendants ordered to answer.

(5) The defendants then made a motion to strike out vital portions of the bill. This is allowed by the chancellor, and the appeal is now before this court. If this be decided favorably to the plaintiff he is still on the threshhold of his remedies. Nothing is adjudicated, except that he has so drawn his bill as to make a case if he can prove what he alleges; subject, however, apparently, if the court of chancery is right, to other motions to strike out other portions of the pleadings, which the chancellor intimates have been decided by this court to be of no account.

*Division II.—Point 2.*—The court of chancery was without justification in going, in its opinion, beyond the terms of the motion, and stating that while the court of chancery was of opinion, on the demurrer, that the sale of the personal property to Corning was conclusive upon the trust now represented by the complainant in this suit, there is nothing in the opinion of the court of errors and appeals expressive of dissent on that head.

*Mr. Thomas N. McCarter,* for James Ludlum.

This appeal is from an order of the chancellor striking out of the bill certain allegations which were rendered irrelevant by the decree of this court, rendered in the same cause, overruling a demurrer to the whole bill, which the chancellor had sustained.

The bill was filed in two aspects.

*First.* To enable the complainant (appellant in this court), as receiver of the partnership estate of James Horner & Co., to redeem a mortgage made by the partners, which had been foreclosed in the court of chancery, on the ground that James Ludlum, the predecessor of complainant, as receiver of the estate of James Horner & Co., although made a party to such foreclosure as an individual, had not been made a party as receiver, and therefore his successor was not barred by the decree, and he sought for that reason to be admitted to redeem the mortgage, and to reduce the amount due thereon, by proving usurious payments, and to redeem after ascertaining the true amount due, notwithstanding the sale made under the decree.

*Second.* The other aspect of the bill was that if such relief could not be had because the decree was a bar, then because of certain alleged frauds in the conduct of the sale, the sale might be set aside and a resale ordered, or complainant then let in to redeem.

A general demurrer to this bill was sustained by the chancellor, he holding that as to the first aspect of the case, the complainant was barred by the decree; the residue of the bill he held unsustainable on other grounds. *10 Stew. Eq. 54.*

On an appeal to this court the chancellor's ruling on the first aspect of the bill was fully sustained, but because the charges of fraud in the other aspect of the case were unanswered, this court held that the demurrer to the whole bill could not be sustained, and it was therefore overruled (*11 Stew. Eq. 284*), and the cause remitted to the court of chancery. In that court an order was entered overruling the demurrer, and directing defendants to answer within forty days.

Thereupon defendants moved the court of chancery to strike out of the bill all those portions of it which were presented in its first aspect, and on which both the chancellor and this court had decided that complainant was not entitled to relief. The chancellor made the order striking out those portions of the bill.

This order is the one now under review.

*First.* The effect of the decision of the chancellor and of this court on the complainant's right to redeem, and the conclusive

Kirkpatrick *v.* Corning.

effect of the decree of the foreclosure, has been to render all such matter impertinent.

In *Story's Eq. Pl.* § *266,* impertinence is defined to be the " introduction of any matters into a bill, answer or other pleading in a suit, which are not properly before the court for decision at any particular step of the suit."

This court having decided that the matter struck out is not capable of being again litigated, it cannot be properly before the court for decision, and therefore comes within the above definition of impertinence.

In such case, under the English practice, it was proper to file exceptions to the pleading—bill or other pleading. Those were referred to a master, and if he reported that the matter excepted to was impertinent, the court expunged it from the record. *1 Smith's Ch. Pr. 569–573 ; Story's Eq. Pl.* § *266–268 ; Horlock* v. *Patch, 10 Jur. 108.*

Rule 215 of the court of chancery has made it optional for a party thus objecting to a pleading to do it, as was done in this case, by motion.

*Second.* The order expunging this matter from the record was rightly made. Certainly, defendants would not be bound to answer any such matter, but would be entitled to limit their answer to such portions of the bill as were proper subjects of controversy. To leave this matter standing in the bill unanswered, would simply encumber the record with a vast amount of useless matter, to which no answer would be put in, and concerning which the court would have no power to grant relief by a decree. See, also, *Mitf. & T. Pl. & Pr. in Eq. 146, 403 ; 1 Barb. Ch. Pr. 41.*

In *Lindsley* v. *Personette, 8 Stew. Eq. 355,* the court of chancery, after overruling a demurrer as too extensive, struck out from the bill that part to which it held that a demurrer would have been sustained.

*Third.* It is submitted that the practice is, in all respects, proper, convenient, and, in this case, necessary, and that the chancellor's order should be affirmed.

The opinion of the court was delivered by

SCUDDER, J.

Of the power of the chancellor to strike out from the plead-ings, matter that is impertinent, there can be no question. Such has been the constant practice of courts of equity, and rules have been made regulating the procedure for striking out all the matter that is irrelevant and calculated to hinder, delay or em-barrass the cause. Express authority is also given in section 109 of the chancery act (*Rev. 125*), and the duty is thereby im-posed on the chancellor, " from time to time, to make such rules and orders to regulate pleadings and practice in the court of chancery as may, in his judgment, render the practice and pro-ceedings therein more efficient, expeditious and simple, and pre-vent unnecessary cost and delay, and that, for that purpose, he shall have power to change and regulate such pleadings and practice."

In accordance with this statute, rule 215 of the court of chan-cery was made " that any objection to a bill or any answer or specific replication, or any part thereof, may be made and adju-dicated upon, on motion, without the filing of a demurrer or exceptions " &c. It gives the benefit of formal proceedings by demurrer and exceptions, on informal motions, promptly heard on eight days' notice. It is useless, therefore, to discuss the point argued, whether this motion to strike out parts of the bill of complaint after a general demurrer, can now be entertained, and whether it is not in the nature of a special demurrer, after a general demurrer has been filed and hearing had thereon. If there was ever any want of power in the court to strike out prolix, irrelevant and embarrrassing statements and charges in a bill, on motion, there is certainly none now. In the modern practice, orders to amend and strike out are most frequently used instead of more formal objections to imperfect pleadings by de-murrer.

The debatable question in this case is whether the judgment of the court has been correctly exercised in striking out matters in this bill which are not properly before the court for decision,

at this stage of the suit. To decide this point it is necessary to consider whether the alleged objectionable parts of the bill have a tendency, or would be admissible in evidence to show the truth of any allegation in the bill that is material with reference to the relief sought. If so, they should stand; if not, they may be stricken out. *Christie* v. *Christie, L. R. (8 Ch. App.) 499, 503; Story's Eq. Pl. § 266.*

This leads us to an examination of the scope and purpose of the bill and the relief that is sought.

This bill of complaint has been before this court, and the contents will be found stated in the reports. *11 Stew. Eq. 234,* on appeal, and *10 Stew. Eq. 54,* in the court of chancery. Its general purpose is, on the prayer of Andrew Kirkpatrick, the receiver, who has been appointed to supersede James Ludlum, the former receiver, to be allowed to redeem the lands of James Horner & Co., sold under decree of foreclosure at the suit of Erastus Corning, on the payment of the sum actually due him on his mortgages, crediting the value of the use and occupation since he has been in possession under the foreclosure sale, and also the actual value of the personal property of said James Horner & Co., bought by said Corning at a sale made by Ludlum, receiver; or, if this relief by redemption be not granted, that the sales of real and personal property may be set aside, the former resold, and the latter accounted for at its true value, and the proceeds applied to the payment of Mr. Corning's mortgage after deducting the credits to which the complainant, as receiver, may be equitably entitled, and the balance, if any, to be paid to him as receiver. The grounds on which this relief is sought are, first, that the title to the lands being in James Ludlum, as receiver, he should have been made a party defendant in the foreclosure proceedings, and, as he was not, no title passed under such sale, and the complainant is entitled to redeem, or have the same set aside.

This court on appeal (*11 Stew. Eq. 234*) held that neither Ludlum nor the devisees of James Horner, deceased, who were made parties defendant in that case, and were the substantial parties in interest, could set up this objection, because, with full

notice and opportunity, they were silent and made no mention of this informality until after the sale; nor could this complainant, who was the successor of Ludlam, as receiver, plead such defect of parties. This accorded with the view of the court below. But on the second ground for relief this court said, in effect, that the allegations of fraud contained in the bill, implicating both Ludlam and Corning, were sufficient to retain the bill, and that the extent of the relief to which the complainant might be entitled must be determined on final hearing. The general demurrer to the bill of complaint was therefore overruled in this court, with this result, that while the complainant, Kirkpatrick, as receiver, was not in a position to set up as a ground of relief against the foreclosure proceedings, the irregularity of not including Ludlum, then receiver, as a party in the cause, this court left all the charges of fraud contained in the bill to be met by answer, and determined on final hearing. These charges of fraud are made broad enough to cover all the dealings between the parties from the inception of the loans on which the mortgages were based, through the proceedings to foreclose; the weak defence of Ludlum, the sale of the personal property, which was bought by Ludlum, while receiver, acting as Corning's agent in the purchase for an alleged inadequate price; the interference with the bidding at the sale of the real estate by giving notice of the Schuyler lease for water-rights of the mill, held in the name of Mrs. Ludlum, wife of the receiver, ending in the purchase of the mill property by Mr. Corning for the amount of the balance left due on his mortgage, and the establishment of the Pompton Steel and Iron Company, in which Ludlum and Corning have the largest interest. All the proceedings, it is alleged, were intended for the benefit of Ludlum after the balance due Corning on the mortgages was paid, and the result now reached is, that Ludlum, with the aid of Mr. Corning's encumbrances, has exhausted all the assets of the late firm of James Horner & Co., at Pompton, to which firm, it is said, he is a debtor for about $70,000, and still remains in the substantial enjoyment of the plant and works with the consent and aid of Mr. Corning. The fiduciary relations of Mr. Ludlam to the

devisees of James Horner, deceased, as surviving partner, and receiver appointed by the court for the settlement of the business of the firm, are stated in aggravation of these alleged fraudulent dealings. Upon this general statement of the character of the charges of fraud that are made in this bill, there is enough to entitle the complainant to a hearing on the question whether the decree for the foreclosure of the Corning mortgages should not be opened, and the sale of the real and personal property be set aside; or that the complainant should be allowed to redeem the real estate, and have the Schuyler lease assigned to him, on equitable terms. While,.therefore, the irregularity of obtaining the decree of foreclosure by failing to make Ludlum, as receiver, a party defendant in the proceeding, has been waived by the acts of Mr. and Mrs. Buckingham, who are the representatives of James Horner's estate, neither their supineness nor acquiescence, after knowledge of the alleged frauds stated in this bill of complaint, can conclude the present receiver from inquiring into these alleged matters of fraud behind the decree of foreclosure, and following the decree and sale. There are some creditors left. It is true, they are few in number, and their claims not very great in amount, but, such as they are, this receiver represents them, and the court will protect them. The affairs of the late firm of James Horner & Co. are still unsettled, and the complainant is charged with the responsibility to collect assets and make such settlement under the order of the court that appointed him.

The order of the chancellor treats the decree of foreclosure of the Corning mortgage as conclusive for all purposes, and strikes out all parts of the bill relating to the loans, alleged usury, and true account for the amount equitably due on said mortgages, upon what he supposed was the judgment of this court, as reported in *11 Stew. Eq. 234.* But this court there left all the allegations of fraud, which were the second branch of the complainant's case, undetermined. While, therefore, the decree of foreclosure is conclusive as to the parties who were interested, at the time, in the lands foreclosed, so that they cannot attack it for informalities or want of proper partie·, yet the sale of the real

and personal estate may be set aside, and the decree opened, if fraud be shown, and the prices paid for the land and personal estate may be inquired into, to ascertain how much is equitably due from one party to the other. On the assumption that the allegations of complicity in the fraud charged in the bill can be proved to the satisfaction of the court, the decree and sales should not stand in the way of the present receiver. The strong language applied to cases of fraud is that " deeds, obligations, contracts, awards, judgments or decrees may be instruments to which parties may resort to cover fraud, and through which they may obtain the most unrighteous advantages, but none of such devices or instruments will be permitted, by a court of equity, to obstruct the requisitions of justice. If a case of fraud be established, a court of equity will set aside all transactions founded upon it, by whatever machinery they may have been effected, and notwithstanding any contrivance by which it may have been attempted to protect them. It is immaterial whether such machinery and contrivance consisted of a decree in equity and a purchase under it, or of a judgment at law, or of other transactions between the actors in the fraud." *Kerr on Fraud and Mistake 43, 44.*

The allegations of fraud in this bill, consisting of successive acts, all affecting the assets of the partnership of James Horner & Co., and depending on each other, so as to control the amount that will be left for payment of debts, if any remain unpaid, are sufficient to hold the entire bill for hearing on such proofs as the complainant may be able to make, without striking out the parts which relate to matters prior to the decree of foreclosure, set out in the motion for the order appealed from.

The order will be reversed.

*Order unanimously reversed.*