MITFORD C. MASSIE et al., complainants,

*v.*

THE ASBESTOS BRAKE Co. et al., defendants.

[Decided October 27th, 1924.]

1. Where a license to manufacture a patented article contains a covenant on the part of the licensee to pay royalties on his manufactured product, and a further covenant on the part of the licensor to enforce the monopoly controlled by the patent against all infringers thereof to the best of its ability, such covenants are mutual and not independent; and a breach of its covenant by the licensor is a complete defense to a claim on its part for the payment of royalties by the licensee.

2. *Wilfley* v. *New Standard Concentrator Co., 164 Fed. Rep. 421,* approved and followed.

---

On appeal from the court of chancery. On appeal of H. W. Johns-Manville Co. et al.

*Mr. John R. Hardin* and *Mr. Edward L. Katzenbach,* for the appellants.

*Mr. Francis C. Lowthorp* and *Mr. Robert H. McCarter,* for the respondents.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The bill in this case was filed by Massie and others, stockholders of the Asbestos Brake Company, in the right of the corporation, to compel an accounting for and payment of certain royalties by the Johns-Manville Company and the Thermoid Rubber Company.

The Asbestos Brake Company, being the owner of certain patents covering the manufacture of asbestos brake linings, granted non-exclusive licenses to the Johns-Manville Company and the Thermoid Rubber Company on the 2d of May, 1911, to manufacture and sell these patented brake linings. The license in each case provided that the asbestos brake linings manufactured by the respective licensees should be sold at prices to be established by the patentee, as set forth in a schedule attached to the license, and that the licensee should every four months submit to the patentee a statement of the brake linings sold during the past quarter, and should pay to the patentee royalties of ten per cent. on the selling price, less certain discounts. The license also contained this agreement on the part of the company for the protection of the licensees: "The patentee shall enforce the monopoly controlled by this patent against all infringers thereof to the best of its ability."

One of the defenses set up by the Johns-Manville Company and the Thermoid Rubber Company as a bar to the relief sought by the complainants was the absolute failure of the Asbestos Brake Company to protect them against unfair competition, by enforcing the monopoly conferred by its patent, against infringers, or even making any effort in that direction. The act was conceded by the complainants, but

they asserted as a justification for that failure that it was due to lack of funds in the treasury of the company resulting from the non-payment by the two licensees of the royalties called for by their respective contracts. The hearing of the cause in the court of chancry resulted in a decree in favor of the complainants, requiring the defendant licensees to account for unpaid royalties. The defendant appealed from that decree, and after a hearing on that appeal the decree was affirmed. Subsequently, a reargument of the cause in this court was applied for and granted, limited, however, to a discussion of the following questions: *First,* as to the right of the respondents (the complainants below) to an accounting from the appellants, in view of the failure of the Asbestos Brake Company—in whose right the bill in this cause was filed—to observe its covenant to protect its two licensees by enforcing the monopoly, conferred by its patents, against all infringers thereof, to the best of its ability; *second,* whether the parties to this litigation are entitled to relief of any kind in a court of equity, owing to the fact that, as it seemed apparent to some of the members of the court on the case sent up with the appeal, they conspired to conceal from the United States patent office the existence of an English patent which covered some portions of the invention which the incorporators of the Asbestos Brake Company sought to have embraced in patents applied for by them, the purpose of the concealment being to bring about the granting of their application.

As to the second question upon which argument was ordered, it is enough to say that the members of the court are not in accord as to the fact of fraudulent concealment from the United States patent office of the existence of the English patent by the parties to this litigation, and that the conclusion which we reach upon the first of the reargued questions makes the determination of this second one unnecessary.

Taking up the consideration of the question of the right of the respondents to an accounting, notwithstanding its failure to observe its covenant to enforce the monopoly conferred

by its patents against all infringers thereof to the best of its ability. It is manifest that unless the licensees should be protected by such enforcement they could not successfully carry on their business in competition with such infringers, but would be at their mercy, for the reason that the latter could, and undoubtedly would, undersell them in the market, fixing a price less than that which was fixed by the patentee in the license schedules. In our opinion the failure of the Asbestos Brake Company to perform its covenant was not excused by the failure of the present appellants to pay royalties under their licenses. The obligation taken upon itself by the corporation was not limited to the protection of its licensees only so far as the royalties to be paid by them would meet the expenditures necessary to be incurred by the licensor in the enforcement of its patent rights against infringers. Their contract was to use every reasonable effort to protect the appellants against unlicensed competition, whether the royalties would be sufficient to meet such expenditures or not.

Our view on the original hearing, as to the extent of the obligation of the corporation, did not differ from that now expressed, but we considered it a matter not involved in the determination of the appeal, for the reason that, as we then thought, the covenant to pay royalties and the covenant to protect against infringers were independent, and that, therefore, the failure of performance by one of the parties did not excuse performance by the other. But further argument upon and consideration of the point has led us to the conclusion that this view is unsound. A similar question was presented for solution in the United States circuit court, in the case of *Wilfley* v. *New Standard Concentrator Co., 164 Fed. Rep. 421,* and Judge Gilbert, in delivering the opinion of the court, laid down, as we now think, the correct doctrine, and that is that the two covenants are mutual and not independent; that, the whole contract being executory, the party who seeks to enforce it against the other must show performance, or a tender of performance, or readiness to perform on his part; that a covenant to guard the claims of

the patentee and protect the rights granted to the licensee against infringers is a concurrent condition, upon which the obligation of the licensee to pay royalties depends, and that this covenant of the patentee is to be complied with at all times during the life of the license; that the right granted under such a license is in the nature of a monopoly, distributed among licensees, and, so long as it is enjoyed by the licensees, they are bound to pay the consideration therefor, but that when, by reason of something beyond their control, they are deprived of that exclusive right, there is a failure of consideration; and, finally, that where one who has agreed to pay royalties for an exclusive right under a license is deprived of that right by the default of his licensor in violating a covenant to protect the exclusive right so granted, and to prevent infringement thereof, thereby depriving him of the substance of that for which he contracted to pay royalties, the breach of the covenant by the licensor is a sufficient answer to a claim on his part for the payment of royalties, and defeats recovery thereof. The justice of the conclusion expressed by Judge Gilbert seems to us manifest, and the reasoning upon which it is based convincing. Our further consideration of the cause satisfies us that we were in error in affirming the decree under review, and that it should be reversed. It will be so ordered.

*For affirmance*—PARKER, MINTURN, BLACK—3.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, KALISCH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS—11.