This matter is before me on a motion to strike the bill of complaint and to cross-examine complainant on his affidavit annexed to the bill. Following is a brief recital of the facts leading up to the motions.
On August 21st, 1942, John Warren, the defendant in this cause, instituted a libel action against Frank Hague, the complainant herein, in the Monmouth County Court of Common Pleas. Issue was not joined until March 13th, 1945, on which date the plaintiff in the law action filed a reply to the defendant's amended answer.
In his amended answer the defendant in the law action (complainant herein) denied all of the allegations of the complaint and set up seven separate defenses to the libel action, including the defenses of truth, privilege, and fair comment.
On March 19th, 1945, complainant filed with me a bill for discovery in aid of his defenses to the libel action. The bill is a voluminous and detailed document, fully verified by the complainant, and has annexed thereto a copy of the defendant's complaint in the libel action and a copy of the complainant's amended answer to the complaint. The bill prays that the defendant, Warren, answer the bill under oath; that he further answer under oath 244 interrogatories therein propounded to him; that Warren be restrained from proceeding with his libel action until he makes the discovery prayed for; and that a subpoena issue.
Upon the filing of the bill I advised an order to show cause with a provision therein restraining the defendant, Warren, from proceeding with his libel action until the return day of the order, and until the further order of the court. In the order Warren was given leave to move to vacate, modify, or dissolve the restraint upon two days' notice to the complainant or his solicitors. The order to show cause was made returnable before me at the Jersey City Chancery Chambers on April 2d 1945.
Instead of moving the matter before me the defendant, on notice to complainant's solicitors, on March 22d 1945, applied to Vice-Chancellor Berry, at the Chancery Chambers *Page 119 
in Long Branch, to dissolve the ad interim restraint contained in the order to show cause advised by me on March 19th. Vice-Chancellor Berry declined to entertain the motion because of its irregularity.
Upon Vice-Chancellor Berry's refusal to act the defendant, on notice to complainant, appeared before the Chancellor on March 29th, 1945. He there urged (1) that the Chancellor recuse himself on the ground that he had given an opinion in this cause; and (2) that the proceedings before me be set aside for alleged lack of jurisdiction. Both motions were denied by the Chancellor for the reasons set forth in an opinion filed in this cause, a copy of which was furnished me by the Chancellor on April 30th, 1945.
It might not be amiss at this point to set forth briefly the Chancellor's reasons for his denial of the motions.
On the first motion, the Chancellor determined that there was no basis for his disqualification; that he gave no opinion upon the merits of the cause; and that he merely suggested, when asked by counsel for the complainant, that counsel might make an application in Vicinage No. 1 (Hudson) rather than Vicinage No. 3 (Monmouth) if he moved with respect to the bill of discovery which he had under contemplation at the time.
On the second motion before the Chancellor, the defendant urged that the bill of discovery is ancillary and auxiliary to the libel action and that therefore the cause of action presented by the bill is controlled by the venue or situs of the action at law; also, that rule 128 of this court made it mandatory to file the bill in this cause with the Vice-Chancellor regularly sitting in Monmouth County and that no other Vice-Chancellor could acquire jurisdiction of the cause. On this motion the Chancellor found that the vicinage of the cause of action presented by the bill is not determined or fixed by the situs of the action at law; that the purpose of a pure bill of discovery is to compel the party to the action at law to make discovery of documents and proofs within his knowledge, possession and control for the use of his opponent in the trial of the law action; that the records and proofs of which discovery is sought in this cause relate to the business *Page 120 
and professional activities of the defendant whose business office is in Jersey City; that the complainant resides in Jersey City; and that the defendant, in answer to direct questions, failed to state that, or how, he would be inconvenienced, prejudiced, or substantially injured or aggrieved by prosecution of the cause in Vicinage No. 1 (Hudson).
The Chancellor also observed that rules of court are designed to regulate the orderly procedure of court business and that their promulgation, change, or abrogation are matters within the sound discretion of the Chancellor; and that the location of the sought documents and proofs should be one of the controlling reasons in determining the vicinage of a cause of action of this character.
For the reasons stated in his opinion, the Chancellor approved my assumption of jurisdiction in this cause and my continuance thereof.
After the motions had been argued before the Chancellor, and before his decision thereon, the solicitors of the parties appeared before me on April 2d 1945, the return day of the order to show cause. The defendant's solicitors made known to me that there was then pending before the Chancellor the motions heretofore mentioned. It was thereupon agreed that the return day of the order to show cause would be continued until after the Chancellor decided the motions.
After the Chancellor made his determination, there was moved before me, on May 14th, 1945, the continued return day of the order to show cause advised by me on March 19th, a motion to dismiss the bill of complaint. Incorporated in the notice of motion was an application for an order to cross-examine the complainant on his affidavit annexed to the bill of complaint for the purpose of obtaining further proof as a basis for dismissing the bill.
At the argument counsel for the defendant stated he was appearing solely to ask the court for an order to cross-examine the complainant under rule 215 of this court; that he was not prepared to argue the motion to strike the bill; and asked that such motion be continued until after the cross-examination of the complainant had been completed.
After hearing the arguments of counsel leave was given to *Page 121 
file briefs. Counsel for the defendant has filed two memoranda, one on his motion to cross-examine the complainant, and the other on his motion to strike the bill. Counsel for the complainant has filed a memorandum in opposition to the granting of the motions.
After a careful consideration of the bill of complaint, the affidavits filed on behalf of the parties, and the briefs, I have concluded that both motions must be denied.
On the motion to cross-examine the complainant, defendant charges that certain information has been withheld from the court; that the bill fails to disclose facts within the knowledge of the complainant which, if stated therein, would preclude him from obtaining the relief he seeks; and that a cross-examination of the complainant will bring forth evidence that the bill of complaint should be stricken.
What the defendant seeks to show by a cross-examination of the complainant, appears to be the following:
(a) That in the libel action Hague had served upon Warren a demand for a bill of particulars; that Warren moved to strike some of the demands; that counsel for Hague abandoned the demands against which the motion was directed; and that thereafter the remaining demands were answered.
(b) That the judge of the Monmouth County Court of Common Pleas had fixed March 26th, 1945, as the date for the trial of the libel action, and that counsel for Hague agreed to said date.
(c) That after Hague had filed an amended answer to Warren's complaint in the libel action, he was served with a notice of motion to strike the same.
(d) That Hague had made an application to the judge of the Monmouth County Court of Common Pleas for an adjournment of the trial of the libel action to a date beyond March 26th, on the ground that two material witnesses who would testify in said action on behalf of Hague could not be available on said date, and that in connection with such application counsel for Hague agreed to proceed with the case on any date subsequent to May 8th, 1945, the date of the municipal election in Jersey City.
(e) That the libel action had been at issue since March 20th, 1944. *Page 122 
(f) That Hague had refused to submit himself to cross-examination before a special master under rule 215 of this court pursuant to a demand served upon him by Warren.
In addition to the foregoing the affidavits filed on behalf of the defendant also show the date on which the libel action was commenced; the date on which the answer was filed; the fact that interrogatories were propounded by Warren to Hague and were not answered; that several applications were made by Hague for an adjournment of the trial; and that Hague's counsel stipulated he would agree that Hague published the alleged libels and would appear at the trial without subpoena to be interrogated regarding his wealth.
Assuming for the moment that rule 215 of this court applies in a case of this kind and that it can be used for the purpose intended by the defendant, it is difficult to understand how the establishment of these facts would justify a dismissal of the bill. In the first place the inclusion of this matter in the bill of complaint would have been objectionable from a pleading viewpoint. But even if it had been alleged, it would avail the defendant nothing on a motion to strike. It is elementary that such a motion admits the facts well pleaded. Tested by this elementary rule the bill must stand.
Defendant, in support of his application for an order to cross-examine the complainant, cites the case of Tansey v.Belleville Relief Association, 99 N.J. Eq. 894;133 Atl. Rep. 423. In that case the bill was one for specific performance of an agreement to convey lands alleged to have been entered into by the defendant with the complainant. Defendant served a notice of motion to dismiss the bill and vacate the lis pendens on the ground that no written agreement was made by the defendant for the sale of the premises involved in that suit to the complainant. Cross-examination of the complainant established that the contract which he sought to have enforced was not in writing. Upon this fact being established the Vice-Chancellor advised an order dismissing the bill.
In the matter now before me the situation is radically different. The bill is one for pure discovery in aid of complainant's defenses to the law action. None of the matter *Page 123 
made known to the court on the motion to cross-examine the complainant would, if established, justify a dismissal of the bill. In the Tansey Case, the issue was a single one. Was the contract sued upon oral or in writing? If the former there could be no cause of action and upon this fact being established there was nothing for the court to do but to grant defendant's motion to strike the bill.
Up to this point it has been assumed that rule 215 is applicable in a case of this kind. However, I conclude that the defendant does not have the right to invoke the rule. I am of the opinion that rule 215 has no application to a motion directed to a restraining order and that it applies only to a motion to enlarge, continue, dissolve, or modify an injunction.
The rules make a distinction between injunctions, temporary or permanent, on the one hand, and restraining orders on the other.Chancery Rules 210 to 221.
Rule 215, pursuant to which defendant claims the right to cross-examine the complainant, is expressly limited to motions to enlarge, continue or dissolve or modify an injunction. There is no injunction in this case. The order to show cause advised by me contains an ad interim restraint which is something entirely different.
Rule 212, which deals with orders to show cause carrying adinterim restraints, and the right to move to dissolve, enlarge, or modify the same, does not provide for cross-examination of an affiant as is the case in a motion to enlarge, continue, dissolve or modify an injunction under rule 215.
The distinction between restraining orders and injunctions has always been recognized in this and other jurisdictions.
In the case of Allman v. United Brotherhood of Carpenters, c., 79 N.J. Eq. 150; 81 Atl. Rep. 116, Chancellor Walker pointed out the distinction between a restraining order and an injunction. The bill in that case sought an injunction. Upon the filing of the bill an order to show cause was advised directing the defendants therein named to show cause why a temporary injunction should not issue and also directing that in the meantime the defendants be restrained from doing certain acts. Upon the return day of the order to show cause the defendants moved to dismiss the bill on the ground that *Page 124 
no subpoenas ad respondendum had been taken out and served although four weeks had elapsed since the filing of the bill. The court held that upon the issuance of a preliminary injunction, subpoenas must be taken out and served and that if a preliminary injunction had issued in this case instead of a temporary restraining order, the motion to dismiss the bill would have had to be granted. The Chancellor (at p. 153 of 79 N.J. Eq), said:
"There is a material distinction between a restraining order and an injunction. 16 Am. Eng. Encycl. L. (2d ed.) 349;Dean v. Bonnell, 4 N.J.L.J. 348. In this case (Dean v.Bonnell) the bill for injunction was filed and an order to show cause, including a restraint, was made, and the hearing thereon adjourned several times, and then a motion was made on the part of the defendant to dismiss the bill on the ground that no subpoena to answer had been issued. Vice-Chancellor Dodd observed that the case of an order to show cause was different from that of an injunction, the order itself commanding the defendant to show cause on a certain day being sufficient to bring him into court.
"Upon the authorities, therefore, my conclusion is, that a subpoena is not required to be taken out with a restraining order which commands the defendant to appear on the return day and show cause why an injunction should not issue, but that when a preliminary injunction issues ex parte upon the filing of a bill without any order to show cause being made, as it sometimes does, it runs — to use its language — until the defendant `shall have fully answered the bill of complaint, and our said court shall make other order to the contrary;' and if the defendant would seek to have the restraint removed, he must answer (unless the Chancellor shall allow the motion to be heard on affidavits under rule 123), and he can be compelled to answer only by the service of subpoena for that purpose; he is never obliged to appear voluntarily."
The complainant does not seek an injunction. His bill invokes the auxiliary jurisdiction of this court to aid him in the defense of the law action and, as an incident thereto, a restraint of the law action until such time as the defendant makes discovery in accordance with the prayers of the bill. *Page 125 
When discovery is made, the suit in this court comes to an end and the defendant will then be free to litigate his libel action in the law court, which is the proper forum for the trial of that issue.
My examination of the Chancery rules and of the cases in this state convinces me that rule 215 has no application to the instant case.
Reverting now to defendant's motion to strike the bill it is obvious from what has already been stated that this motion must fail. A number of reasons are advanced in favor of the motion. These will be considered in the order in which they are argued in defendant's brief.
The defendant's first point is that the Chancellor had no jurisdiction to entertain the bill, and that the defendant is being deprived of his constitutional rights. The point is not argued and is deemed abandoned. Moreover, the question of jurisdiction has been decided by the Chancellor adversely to the defendant.
The next point argued is that the complainant is guilty of laches. This is bottomed upon the fact that the libel action was commenced in 1942; that Hague demanded a bill of particulars and thereafter filed an answer in March, 1944; that in February, 1945, the case was set down for trial for March 26th, 1945; and that one week before the trial date Hague filed his bill in this court. Even if this statement in defendant's brief presented the true and complete factual situation, which it does not, there would be no basis for invoking the doctrine of laches.
Counsel for defendant cite some authority to the effect that a bill for discovery should be filed with such diligence as not to delay the trial of the action in aid of which discovery is sought, and that where there has been laches equity will decline to interfere.
There is no quarrel with this general proposition. It is true that the libel action was commenced in 1942. But it is also true that the case did not come to issue until March 13th, 1945, when Warren for the first time filed his reply. The bill in this court was filed on March 19th, 1945, six days after issue was joined in the law action. *Page 126 
Moreover, mere delay does not constitute laches in equity. Laches involves something more than mere delay, as there must be delay for a length of time which, unexplained and unexcused, is unreasonable under the circumstances, and has been prejudicial to the defendant. Massie v. Asbestos Brake Co., 95 N.J. Eq. 298;126 Atl. Rep. 669; Murphy v. Westfield Trust Co., 129 N.J. Eq. 389; 20 Atl. Rep. 2d 359; De Matteo v. Flanigan, 134 N.J. Eq. 198; 34 Atl. Rep. 2d 744.
A court of equity will not refuse relief simply because complainant delayed his suit, if it is clear that the relief ought to be granted. Carlisle v. Cooper, 18 N.J. Eq. 241.
In the case of Mott v. Iossa, 119 N.J. Eq. 185;181 Atl. Rep. 689, Vice-Chancellor Bigelow had before him for consideration the right of a complainant to equitable aid in the enforcement of a legal right. Complainant alleged that he was an infant when certain property was conveyed to the defendants; that he received no consideration therefor; and prayed that the deed be canceled. It appeared that complainant waited fifteen years after coming of age before bringing suit. The question was, did this delay bar relief? The Vice-Chancellor decided this question in the negative, and stated:
"When complainant comes into Chancery, not to establish and enforce an equitable right but to aid in the enforcement of a legal right, delay will not ordinarily or in the absence of special equities, bar equitable relief unless it has continued long enough to bar the legal right. Burne v. Partridge,61 N.J. Eq. 434; Condit v. Bigalow, 64 N.J. Eq. 504, 514;Paterson v. East Jersey Water Co., 74 N.J. Eq. 49, 97;affirmed, 77 N.J. Eq. 588; Massie v. Asbestos Brake Co.,95 N.J. Eq. 298, 311; 96 N.J. Eq. 612."
Here there has been no such delay as to bar the defendant's legal rights.
Tested by the standards laid down in our cases, it is clear that complainant's right to relief is not barred by laches.
It is next argued that the complainant has an adequate remedy at law, and that the bill of complaint shows no right to equitable relief. *Page 127 
Under this head it is pointed out that in the law action Hague served upon Warren a demand for a bill of particulars, and that Warren furnished the same. It is also pointed out that complainant had the right to demand further particulars in the law action; to demand the inspection of documents; to serve interrogatories; to demand that defendant submit to an examination before trial; and that he availed himself of none of these legal remedies.
Apparently treating the demand for a bill of particulars as a submission to the jurisdiction of the law courts to compel discovery, it is contended that the taking of this step should preclude complainant from obtaining relief in this court.
Reliance is placed upon the case of Hohmann v. Corkran,100 N.J. Eq. 234; 134 Atl. Rep. 867, where Vice-Chancellor Berry said:
"Bills of discovery in aid of suits at law are entertained only where the application is made to this court in the first instance, or where such aid is necessary and the law court is not competent to grant full and adequate relief."
By demanding a bill of particulars in the law action the complainant did not seek such discovery as would preclude him from applying to this court for relief. In the Hohmann Case the plaintiff had three times applied to the Chief-Justice for an order to examine the defendant before trial. Such an order was granted with respect to certain particulars and denied as to others. Thereupon, complainant filed his bill and while, as the Vice-Chancellor says, it was in form the usual bill for strict discovery, it sought, in effect, a review of the action of the Chief-Justice. Under the circumstances of that case the Vice-Chancellor properly held that the complainant was not entitled to relief in equity.
We have no such comparable situation here. The court in theHohmann Case, in recognition of its jurisdiction in matters of discovery (at p. 235, 100 N.J. Eq.), said:
"I do not mean, however, to suggest that this court has in any way been deprived of its ancient jurisdiction of discovery in aid of actions at law where application is made to this court in the first instance. That jurisdiction still exists in a proper *Page 128 
case. Shotwell v. Smith, 20 N.J. Eq. 79; Vineland v.Maretti, 93 N.J. Eq. 513; 1 Pom. Eq. Jur. 269 § 193."
The mere fact that complainant did not avail himself of the legal remedies to compel discovery does not preclude him from seeking relief in this court.
This court's jurisdiction to grant relief by way of discovery is in no way abridged because the law courts may grant similar relief.
In Shotwell's Admx. v. Smith, 20 N.J. Eq. 79, Chancellor Zabriskie stated:
"The bills seek to enjoin suits at law brought by the defendants, upon notes and bonds given to them by the complainant's intestate, and which the complainant alleges were obtained by fraud, and without consideration; also a discovery of the circumstances under which they were executed by the intestate, and what consideration was given; and to have them delivered up and canceled.
"Courts of equity will always compel discovery in aid of prosecuting or defending suits at law, and to make such discovery of use on the trial at law, will restrain the suit from proceeding until the discovery is had. And this ancient and well settled jurisdiction is not taken away by the fact that courts of law have been clothed with powers to compel discovery in such cases by the oath of the complainant. Besides, the power given to courts of law is not so complete and ample as the power to compel discovery in Chancery. At law, the plaintiff cannot be compelled actually to answer; the only penalty is that the court may stop his proceeding in the suit. On this ground the complainant is entitled to maintain the injunctions until answers are put in."
And Vice-Chancellor Emery, in the case of Miller v. U.S.Casualty Co., 61 N.J. Eq. 110; 47 Atl. Rep. 509, said:
"The second objection was that no decree for discovery should be granted, the courts of law, in which action is brought, being, by the later statutes, authorized to compel the necessary discovery in aid of plaintiff's action. The answer to this objection is two-fold. In the first place, it is settled in this state that the statutes conferring jurisdiction for discovery upon the law courts have not had the effect *Page 129 
of divesting the courts of equity of their ancient and original jurisdiction for discovery. Howell v. Ashmore, 1 Stock. 82
(Chancellor Williamson, 1852); Shotwell v. Smith, 5 C.E. Gr.79, 81 (Chancellor Zabriskie, 1869); approved and followed inSweeny v. Williams, 9 Stew. Eq. 627, 629 (Errors and Appeals, 1883)."
The next point argued is that the complainant comes into court with unclean hands and fraudulently withholds matters of record in the law proceedings from this court.
This argument is based on the failure of Hague to disclose to this court that he had demanded a bill of particulars in the law action, and so had first availed himself of the right of discovery; that he failed to disclose that the law action had been noticed for trial in 1943; that this court was not advised that there had been served on Hague, and that there was pending when this bill was filed, a notice of motion to strike the defenses in the amended answer, and that if said defenses should be stricken, he would have no right of discovery; that the bill fails to recite complainant's representations to the Judge of the Monmouth County Court of Common Pleas that he would be ready to try the case on certain designated dates.
The recitation of all these facts in the bill of complaint would not, in my opinion, alter the situation.
A demand for a bill of particulars at law does not seek discovery. The function of a bill of particulars is to aid the demanding party to frame his answering pleading more intelligently, and to limit his opponent's proof within the limits of the particulars furnished. Interrogatories are different. Their purpose is to gain from one's opponent information necessary to build up the case of the party presenting them. Interrogatories cannot be made to perform the office of a bill of particulars and vice versa.
Moreover interrogatories at law can only be propounded after issue is joined. In this case issue was joined in the law court on March 13th, 1945, and within six days thereafter complainant filed his bill for discovery in this court. The discovery thus sought bears no similarity or analogy to the demand for a bill of particulars which was made in the law action. *Page 130 
It is admitted that complainant did not in the law action propound any interrogatories to the defendant. He did not seek an examination of the defendant before trial, nor the production of any records or other data which are the proper subjects of the discovery he now seeks in this court.
Since the demanding of a bill of particulars did not constitute the seeking of discovery at law, there was no reason to make any reference thereto in the bill of complaint.
Dealing now with the defendant's charge that complainant failed to inform the court that there was pending at the time the bill was filed a motion to strike the defenses contained in the complainant's amended answer at law, it is claimed that if such motion is granted the evidence sought by the bill for discovery would be inadmissible in the suit at law, and the complainant would thereupon have no right to discovery.
In the first place this assumes that the motion will prevail. It cannot be anticipated what action will be taken in the law court on the motion. It is just as logical to assume that the motion to strike will be denied. I refuse to speculate one way or the other. But even if the defenses should be stricken the complainant would nevertheless be entitled to the discovery he seeks. Truth, for instance, can be shown in defense of a libel action even under the plea of general issue for the purpose of rebutting the presumption of malice. Merrey v. GuardianPublishing Co., 79 N.J. Law 177; 74 Atl. Rep. 464. Therefore, regardless of the disposition made of the motion to strike the separate defenses, the complainant would still be entitled to the discovery sought by his bill of complaint.
Another ground of complaint is that complainant failed to disclose to this court that the law action had been noticed for trial in 1943. How this would have affected complainant's right to relief, if made known to the court, is not made to appear. The undisputed fact is that issue was not joined in the law action until March 13th, 1945, on which day defendant filed a reply to the amended answer.
The last argument made under this head is that the bill failed to recite the representations made with respect to complainant's willingness to proceed with the law action on certain specified dates. *Page 131 
A recital of such matter in the bill would have availed the defendant nothing. The mere fact that complainant's counsel agreed on certain trial dates for the law action can have no bearing on complainant's right to the relief sought, if the bill is otherwise sufficient, as I find it to be.
Under another point in his brief defendant argues that the bill is scandalous. It is contended that a bill of discovery which seeks evidence, which if true, would be proof of moral turpitude or criminal action, is defective and must be stricken, citing in support of such proposition Pom. Eq. Jur. (5th ed.) 295 ¶197.
Whether or not the bill is scandalous depends upon the relevancy of its allegations. It is only when matter contained in the bill is irrelevant that it is properly said to be scandalous.Chew v. Eagan, 87 N.J. Eq. 80; 99 Atl. Rep. 611.
A bill will not be stricken if the alleged objectionable parts thereof would be admissible in evidence to show the truth of any allegation in the bill that is material with reference to the relief sought.
The proper standard was set down by our Court of Errors and Appeals in the case of Kirkpatrick v. Corning, 40 N.J. Eq. 241,
where the court said (at p. 255):
"To decide this point it is necessary to consider whether the alleged objectionable parts of the bill have a tendency, or would be admissible in evidence to show the truth of any allegation in the bill that is material with reference to the relief sought. If so, they should stand; if not, they may be stricken out.Christie v. Christie, L.R. (8 Ch. App.), 499, 503; StoreyEq. Pl., § 266."
The bill of complaint alleges that the defendant participated in a combination and agreement to injure the complainant in certain specified respects. It follows that any and all acts evidencing defendant's participation in the alleged combination and agreement would be admissible and tend to prove the allegations of the bill. Under the circumstances such allegations are relevant to the issues involved and cannot be said to be scandalous.
Moreover, the complainant is not seeking to impose any penalty or visit any forfeiture upon the defendant or others. *Page 132 
The bill merely seeks to establish a defense to the law action, a civil suit. The assertion is made that the bill seeks evidence to establish a crime on the part of the defendant. But the defendant fails to show of what crime the answers would convict him. His motion is to dismiss the whole bill, without specifying the objectionable parts thereof.
In 18 C.J. 1072 § 31, the rule is stated as follows:
"Where the bill is for discovery alone, a general demurrer to the whole bill will be overruled if plaintiff is entitled to a discovery of any part; the demurrer must specify and be limited to only the objectionable part."
As a general rule it may be stated to be true that a defendant may not usually be compelled to disclose facts which would tend to incriminate him. But there is a very decided and well recognized exception to this rule. In 1 Pom. Eq. Jur. (4thed.) 297 § 202, that learned author says:
"This restriction upon the right to a discovery is subject to several limitations and exceptions necessary in order to promote the ends of justice. A defendant is always compelled to disclose his frauds and fraudulent practices, when such evidence is material to the plaintiff's case, even though the fraud might be so great as to expose the defendant to a prosecution for conspiracy, unless perhaps the indictment was actually pending."
The limitation on the general rule is stated in 1 Daniell'sChancery Pleading and Practice (6th Am. ed.) 562, as follows:
"The rule that a defendant is not bound to answer, in cases which may subject him to punishment or penalties, appears to be liable to modification, in some cases, where the facts charged in the bill would amount to conspiracy * * *."
This case, therefore, would seem to come squarely within the well recognized exception to the general rule that a defendant cannot be compelled to incriminate himself.
The next point argued in defendant's brief is that the bill of complaint is fatally defective in that it sets forth no facts but contains only assumptions, charges, and conclusions. In support of this point defendant cites Chancery rule 45 and cases thereunder. *Page 133 
Suffice it to say in answer to this-point that an examination of the bill of complaint satisfies me that sufficient facts are alleged to constitute an equitable cause of action.
The last point argued by the defendant is that the bill of complaint seeks to intrude upon the jurisdiction of the law court in an action already pending, and thus is fatally defective. In support of this argument the defendant cites the cases ofEsplanade Amusement Co., Inc., v. Asbury Park, 136 N.J. Eq. 356; 42 Atl. Rep. 2d 206, and Stagg v. McCann, 96 N.J. Eq. 327; 125 Atl. Rep. 240. Neither case was a discovery proceeding in aid of an action at law. Moreover, the restraint imposed in this case was upon the defendant and not upon the court in which the law action is pending. If the defendant means to argue that Chancery, in a discovery proceeding, has no right to interfere in a pending law action, the authorities are directly to the contrary. Shotwell's Admx. v. Smith, supra.
An order may be presented in accordance with the views herein expressed. *Page 134