Krauth v. Thiele.

THERESE KRAUTH

v.

HENRIETTA THIELE et al.

1. Where a husband purchases land with the separate estate of his wife, taking a deed in his own name, a trust results in favor of the wife.

2. A resulting trust arises by operation of law from contemporaneous circumstances which give the legal and equitable titles different directions, and it must therefore arise at the instant the deed is taken and the legal title is vested in the grantee, and the situation of the transaction when the title passes is to be looked to, and not the situation preceding or following that time.

3. A resulting trust may be proved by parol, but the proofs must be full, clear and satisfactory.

4. If a wife, in whose favor a resulting trust may be established in land, the title to which is in the husband, with knowledge of the equity to which she is entitled, or supposing the legal title of the land to be jointly in her husband and herself, voluntarily joins in a conveyance of that land, she cannot afterwards, as against her grantee or his assigns, establish a resulting trust in the land.

Krauth *v.* Thiele.

On bill, answer, replication and proofs.

*Mr. Samuel D. Haines,* for the complainant.

*Mr. Charles H. Winfield,* for the defendant.

THE CHANCELLOR.

The object of this suit is to establish a resulting trust. It appears that the complainant was married to John Mesow in October, 1856, and that, in May, 1858, Mesow purchased from William F. Coles and others a lot of land situate on Fourth street, in Jersey City, for the consideration of $750, and during the following year erected upon it a building, in which he· and the complainant resided until the year 1864 or the year 1865. In October, 1864, the property was mortgaged to Margaret Squier, to secure the payment of $2,500, by a mortgage purporting to have been executed and acknowledged· by both Mesow and the complainant. Shortly after this mortgage was given, Mesow purchased seven other lots of land in Jersey City, erected a house upon them and, with the complainant, moved into that house. On the 13th of January, 1865, a deed of the property on Fourth street, purporting to be for the consideration of $3,800, and to have been executed and acknowledged by both Mesow and the complainant, was made to Lewis F. Mohl, the step-father of Mesow. The deed was expressly made subject to the Squier mortgage which Mohl covenanted to pay. Mohl appears also to have signed the deed. The certificate of acknowledgment was made by Stephen B. Ransom, a lawyer of long and most excellent standing at the bar of this State, who is one of the masters of this court. It certifies that Mohl, Mesow and the complainant appeared before Mr. Ransom and acknowledged that they signed, sealed and delivered the deed as their voluntary act and deed, and that, upon an examination separate from her husband, the complainant acknowledged that she signed, sealed and delivered the deed freely, without fear, threats or compulsion of or from her husband.

John Mesow died in 1877, and in 1879 the complainant married her present husband, John M. Krauth.

Krauth *v.* Thiele.

Lewis Mohl died in 1881, leaving a will which was admitted to probate in 1883, by which, among devises and bequests to his wife and son and the children of Mesow and the complainant, he devised the lot on Fourth street to Catharine Mesow, the eldest child of the complainant and John Mesow, and afterwards the wife of Herman Dieke. In January, 1885, Mrs. Dieke and her husband, for the consideration of $3,000, conveyed the lot in question to the defendant, Henrietta Thiele. The complainant now insists that her former husband, John Mesow, purchased the lot thus conveyed with her money, taking the conveyance of it, without her knowledge, to himself, that she did not join either in the execution of the mortgage to Margaret Squier or in the execution of the deed to Lewis Mohl, and that both Lewis Mohl and the defendant, Henrietta Thiele, had notice of her claim to the land. ' The defendants deny each of these allegations and insist that the complainant has failed to establish any of them.

The first and most important question is whether the purchase by Mesow was with his wife's money.

" It is a settled principle," says Mr. Justice Depue in *Cutler* v. *Tuttle, 4 C. E. Gr. 549, 558,* " that where one person purchases property for a stranger and the purchase money is paid by the stranger or out of his funds, although the title is taken in the name of the person making the purchase, a trust results, and the land is held in trust for the party whose money was paid. This trust arises without any declaration in writing, for it is expressly excepted by the statute of frauds from the operation of that statute, and the facts necessary to constitute such trust may be proved by parol evidence."

It is further settled that, where a husband purchases land with the separate estate of his wife, taking the deed in his own name, a trust results in favor of the wife, and equity will decree a conveyance to her. *Lathrop* v. *Gilbert, 2 Stock. 344; City National Bank* v. *Hamilton, 7 Stew. Eq. 158; 1 Lead. Cas. Eq. 342; 1 Perry Trusts § 127.*

A resulting trust arises by operation of law from contemporaneous circumstances which give the legal and equitable titles different directions. It must, therefore, arise at the instant the

deed is taken and the legal title is vested in the grantee, and the situation of the transaction when the title passes is to be looked to, and not the situation preceding or following that time. *Tunnard* v. *Littell, 8 C. E. Gr. 264; Midmer* v. *Midmer, 11 C. E. Gr. 299; Read* v. *Huff, 13 Stew. Eq. 229; 1 Perry Trusts* § *133.*

The circumstances that are relied upon to establish a resulting trust must be distinctly proved by full, clear and satisfactory evidence. *Cutler* v. *Tuttle, 4 C. E. Gr. 549, 560; Midmer* v. *Midmer, 11 C. E. Gr. 299; Parker* v. *Snyder, 4 Stew. Eq. 164; S. C., 5 Stew. Eq. 827; Read* v. *Huff, 13 Stew. Eq. 229; Dyer* v. *Dyer, 1 Lead. Cas. Eq. 335.*

In the case under consideration the evidence of the use of the money of the complainant in the purchase of the land in controversy is meagre, unsatisfactory and far from convincing. The witnesses who testify upon the subject speak from remembrance after a lapse of some twenty-nine years, and, with the exception of the complainant, vaguely, as if recalling dim and almost forgotten impressions, the accuracy of which may be doubted. The complainant testifies under the powerful influence not only of pecuniary interest, but of bitter enmity to the defendant Henrietta Thiele, and to Catharine Dieke, and after having acquiesced for several years in her daughter's title to the property in question without intimating that she had any claim upon it. She is not sustained by any documentary proofs, and her statements upon other subjects which are involved in this controversy are so contradicted as to cause me to doubt the reliability of her testimony upon any point in which she apprehends that her interest is involved.

She states that, in the fall of 1858, she received a draft from Germany, from her father, for $1,200, which she and her husband had cashed in New York city; that she gave the money to her husband and he purchased the land, taking the deed in his own name instead of in their joint names, as she thought he had taken it. Theodore Frank, a house-painter, who is called to corroborate the complainant, says that some time in 1858, which he does not fix, John Mesow showed him a letter with a slip of paper in it—a draft for $1,200 from Germany, payable to Mesow and, the

Krauth v. Thiele.

witness thinks, also to the complainant.    He says that after that
occurrence he learned that Mesow bought a lot and built a house.
He says that he has forgotten the person who sent the draft, and
adds that the matter did not interest him.    Frederick Hauser, a
tinsmith, says that Mohl and Mesow told him that the first
money that came was " about $1,200, more or less, very near to
that," and that it came in 1864 or 1865.    He adds:

"As near as I can judge, a year or two; two years afterwards, it may have
been in 1865, they told me that $2,000 or even more would come, and after-
wards they told me it had come, that they received it."

This is the entire proof as to the use of the complainant's
money in the purchase of the land in question.    The land was
in fact purchased for $750 in May of the year 1858.    According
to the testimony of the complainant the $1,200 did not come to
her until the following autumn.    She says that in 1859 a house
was erected upon the land.    It is not pretended that any other
money than the $1,200 came to the complainant before 1865 or
1866.    The fact that in 1864 the property was mortgaged for
$2,500 indicates that more than $1,200 must have been expended
upon it.    It may have been that the $1,200 was expended in
the erection of the house upon the land in 1859, but the proofs
by no means satisfy me that, at the time the land was purchased,
any part of the complainant's money was used in the purchase.
Proof of subsequent expenditure of the complainant's moneys in
the improvement of the property relates to a situation subse-
quent to the passing of the title and will not establish a resulting
trust.    More ample and convincing proof than is here produced
must be had to justify the disturbance of a title that has stood
unquestioned for nearly thirty years.

But, if the complainant's money was used in the purchase of
the lot, I think that the solution of the second question which
the case presents, namely, whether she joined in a conveyance of
the lot to Lewis Mohl, must effectually demonstrate that her suit
cannot be maintained.    She denies that she joined in that deed,
and intimates that she must have been impersonated at its exe-
cution by a woman with whom her husband at one time lived

in adultery for several months. But she ·admits that her husband returned to her in August, 1864, and that he lived with her in January, 1865, the very month in which the deed was executed. She also says that Mr. Ransom, the master before whom the deed was executed, was accustomed continually to pass the saloon that she and her husband kept near the court-house, and that he knew her very well in 1864. Mr. Ransom states that he has known her for many years. He recognizes his signature to the certificate of acknowledgment endorsed upon the deed, but is unable to recall any of the circumstances of the transaction with which it is connected. It would seem, then, hardly to be possible for Mr. Ransom to·have been deceived by a fraudulent impersonation of the complainant at the time the deed was executed, and the high character of that gentleman precludes even suspicion that his certificate was willfully false.

But the proof of the genuineness of the complainant's participation in the deed does not rest here. With a view to comparison of signatures the defendant's counsel presented to Mrs. Krauth two mortgages upon lands in Bergen county purporting to have been made by her and her husband, Mesow, in 1864, and asked her if she had signed them, and upon her denying her signatures, he produced most reputable and credible witnesses who flatly contradicted her, and by positive and direct testimony, beyond all doubt, established that she signed both of those instruments. Her signature to a letter was also satisfactorily established, notwithstanding her denial of it. Upon a careful comparison of the signatures thus proved with the disputed signature to the deed to Lewis Mohl, I am convinced that the latter signature is the complainant's. She then conveyed whatever interest or right she had in the Fourth street property to Lewis Mohl, and this was done voluntarily and with full knowledge that she had an interest in the land beyond a mere inchoate right of dower. She states that, until shortly before the bill was filed in this suit, she supposed that the title was in the names of her husband and herself. Such a conveyance as she made to Lewis Mohl effectually cuts off any equity she may have had, and defeats her present suit.

My conclusion upon these questions obviates the necessity of discussing the contradictory evidence upon the question whether the defendant, Henrietta Thiele, was a *bona fide* purchaser without notice of the complainant's claim to the land she bought. It is difficult, amidst the conflict of statements in this part of the case, to say what the truth is. As the burden is upon the complainant to show notice, it would seem that, for the complainant, the most favorable outcome of a critical examination of the testimony is a determination that she has not borne that burden. I am of opinion that the bill must be dismissed, with costs.