About 1903 the defendant Nicola Iossa married Mrs. Filomena Mottemucci, and thereafter lived with her as her husband until her death in 1928. Nevertheless, during all those years, Mrs. Mottemucci was not the lawful wife of Iossa for she had another husband living from whom she was never divorced. Mrs. Mottemucci had two children by her lawful husband, one of whom, John Mottemucci, generally known as Joseph Iossa, is the complainant. He lived with his mother and Nicola until the former's death and continued thereafter to live with Nicola until last year.
The property which is the subject of controversy, a small house and lot in Fairview, Bergen county, was conveyed in 1913 to complainant, under the name of Joseph Iossa, by a Mrs. Schompf to whom he gave a purchase-money bond and mortgage for $675, although at that time he was only fifteen years old. This mortgage was canceled of record in 1916 and a few weeks thereafter, complainant, without receiving any consideration, conveyed the premises to Nicola and "Filomena Iossa, his wife." The latter grantee was, of course, Mrs. Mottemucci. Joseph, at that time was eighteen years old. Complainant came of age in 1919 and was married in 1921. In 1933, dispute arose over the ownership of the property and was followed by the present suit.
Complainant points out that he was an infant when he conveyed the property to Nicola and Filomena, that he received no consideration for the conveyance, and he prays *Page 187 
that the deed be canceled. He also notes, as a basis for alternative relief, that Nicola and Filomena were never legally husband and wife, and hence, he says, they took title as tenants in common and Filomena's half interest descended to her heirs, complainant and his sister, and he prays judgment accordingly.
Nicola answers and counter-claims. He alleges that when the property was first conveyed by Mrs. Schompf to complainant, the consideration, including the purchase-money mortgage, was paid by Nicola, wherefore he claims a trust resulted for his benefit. He points out that complainant waited fifteen years after coming of age before bringing suit and alleges that complainant ratified the deed executed in infancy.
Nicola avers that when he married Filomena, he believed she was a widow; that in this belief he caused her to be joined as a grantee with him in the deed from complainant, although she had paid no part of the consideration for the property, and that he would not have caused her so to be joined if he had known that she was not his wife. Relying on estoppel in pais and also on estoppel by deed, he prays that Filomena's heirs be restrained from asserting any interest in the property.
Without discussing the evidence, I will state briefly certain conclusions on the facts. Nicola paid the original consideration for the conveyance to complainant, $600. After the purchase of the lot, complainant, although only a boy, worked regularly until his marriage in 1921, and turned his wages over to his mother. His mother took in a few boarders. Nicola also worked and received wages. For ten years the house was rented while the Iossas lived on a farm. The money from all these sources was used for the support of the family, the payment of mortgages, and the improvement of the property. The deed from complainant to Nicola and his mother was made at their direction, in order to enable them to borrow on the security of the property, since the lender would not accept a bond and mortgage of an infant. Complainant knew the nature of the instrument he signed in 1918 and was aware thereafter that title was in Nicola and *Page 188 
his mother. About two years ago, Nicola decided to remarry and that decision brought up the question of the property.
Before deciding whether a resulting trust in favor of Nicola arose upon the conveyance to the infant Joseph, the relation which existed between these two should be considered. Nicola had taken Joseph into his household when the latter was five years old and he had been caring for him as a member of the family for ten years, at the time of the conveyance. The lad was commonly known by the name Iossa; he and Nicola called each other father and son. There is no doubt that Nicola stood in loco parentis.
"The proper definition of a person in loco parentis to a child is a person who means to put himself in the situation of the lawful father of the child with reference to the father's office and duty of making provision for the child." Brinkerhoff v.Merselis' Executors, 24 N.J. Law 680.
Generally, where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises. "Where, however, the conveyance is not made to a stranger but is made to a person whom the purchaser is under a legal obligation to maintain, such as a wife or child of the person who pays the price, the good consideration of blood or love and affection will support the conveyance and no resulting trust will arise from the payment of the consideration. In such cases, the presumption is that a settlement or advancement was intended. See3 Pom. Eq. Jur. 981, 1039. But these presumptions may be overcome by evidence disclosing a contrary intention. Repeated adjudications in this state have defined the principles already stated and have also defined the proofs necessary to overthrow a presumed or resulting trust or to rebut the presumption of a gift or settlement in the case of a child or wife. The proofs, except as to acts or declarations of the party to be charged, must be of facts antecedent to or contemporaneous with the purchase or so immediately afterwards as to form a part of the res gestae. The proofs must also be convincing and leave no reasonable doubt as to the intention of the party." Herbert v. Alvord, 75 N.J. Eq. 428.
The phrase in the foregoing quotation, defining the status *Page 189 
of the grantee, namely, "a person whom the purchaser is under a legal obligation to maintain" is not exact. In Hallenback v.Rogers, 57 N.J. Eq. 199; affirmed, 58 N.J. Eq. 580, the conveyance ran to a married daughter of the person who paid the purchase price and in Mullen v. Mullen, 98 N.J. Eq. 90, 727,
to an adult son. In each case, it was held that no trust resulted although, presumably, the payor was under no legal obligation to maintain the grantee. On the other hand, I surmise that a trust would result if the deed ran to the parent or grandparent of the purchaser, even though the latter, because of peculiar circumstances, was under a legal obligation to support the former. In the Restatement of the Law of Trusts § 442, it is said that a trust does not generally arise when the grantee "is a wife, child, or other natural object of the bounty of the person by whom the purchase price is paid." The comment to the section states that the rule applies where the payor stands in locoparentis to the transferee. To the same effect is 65 C.J. 419, and 3 Pom. Eq. Jur. § 1039. See, also, Wolters v. Shraft,69 N.J. Eq. 215; affirmed, 70 N.J. Eq. 807. When the price is paid by a person standing in loco parentis, an advancement or gift, and not a trust, is presumed. It follows that upon the conveyance to complainant, the payment of the purchase price by Nicola was presumably made as a gift to complainant. There is no evidence to rebut this presumption.
Such contributions as Nicola later made toward taxes, repairs and the purchase-money mortgage, do not raise a trust since a resulting trust must arise at the time of the conveyance or it will never arise at all. Krauth v. Thiele, 45 N.J. Eq. 407;Bankers Trust Co. v. Bank of Rockville Center, c., 114 N.J. Eq. 391.
Iossa further contends that his gift of the land to the boy Joseph was invalid because founded in mistake: The gift was intended for the son of his wife; Joseph does not fit that description. To this, defendant answers that the gift was intended for Joseph, the lad who had lived in Iossa's home for ten years — since he was five years old; that the motive, presumably, was Iossa's affection for the boy himself. Iossa rejoins: He would not have married Joseph's *Page 190 
mother or brought Joseph into his household but for the mistaken belief that Filomena was a widow; if he had not continued in this belief, he would not have continued to live with them, and despite his affection for the boy, would not have given him the property. Further, the mistake was caused by Filomena's fraudulent concealment of her true status. In this connection, I am assuming — though the proofs are unsatisfactory — that Iossa actually was ignorant of the continued existence of Filomena's lawful husband.
The general principles applicable are well settled, though their application is not always easy. A gift may be rescinded for the fraud of the donee or a third party (Huguenin v. Baseley,14 Ves. 288; 6 E.R.C. 834), or on the ground of mistake of the donor, unmixed with fraud. "But to constitute a fraud or mistake for which equity will relieve against a contract, it is essential that the misrepresentation or concealment should be practiced, or the mistake made, in regard to a fact material to the contract; that is, it must be essential to its character and an efficient cause of its concoction. 1 Story Eq. Jur. §§ 141, 192, 195.
Upon this point all the authorities concur. The fact misrepresented or concealed must either affect the substance of the contract or the value of the thing bargained for; or, if it be an extraneous fact, it must be such as induces the party aggrieved to pay more or accept less than the thing bargained for, than its real value." Nicolson v. Janeway, 16 N.J. Eq. 285; 2 Pom. Eq. 856. The same principle applies to gifts. A mistake in an extraneous fact is not a ground for avoiding a gift unless the gift would not have been made, except for the mistake.Pearce v. Stines, 79 N.J. Eq. 51.
In the present instance, there was no mistake in the terms of the gift or in the thing given or in the identity of the donee. The mistake was in an extraneous fact: The belief that the donee's mother was the wife of the donor. Was this belief, existing at the time of the gift, an efficient cause of the gift? It does not matter how Joseph came to be brought into Iossa's household. Iossa's original belief that Filomena was a widow, although it led to the marriage and started the chain of circumstances which led to the gift, was *Page 191 
too remote to affect the validity of the gift. The only mistake which may be material is that which existed at the delivery of the deed. The question, after all, is one of fact — Iossa's state of mind. Considering that he had stood in loco parentis to the boy for ten years, and that he gave the property to him rather than to his mother, I come to the conclusion that the cause of the gift was his affection for the boy himself and not his belief that Filomena was his lawful wife. The gift was valid.
When complainant deeded the property to his mother and Nicola he was the owner, both at law and in equity. He was still an infant, and he received no consideration for the conveyance. It has been said that an infant's contract which operates to his benefit, binds him, but one to his prejudice is void, and when the beneficial or prejudicial nature of the contract is uncertain, it is voidable at his election. Following this are decisions that an infant's gift, or deed without consideration, being prejudicial, is wholly void. In New Jersey, however, it seems that all contracts of an infant, executed or executory, are voidable only. Ownes v. Ownes, 23 N.J. Eq. 60; Eaton v.Eaton, 37 N.J. Law 108; La Rosa v. Nichols, 92 N.J. Law 375.
The rule is broad enough to include a gift. Bankers Trust Co.
v. Bank of Rockville Center, c., 114 N.J. Eq. 391, 405.
Complainant came of age in 1921 and until 1934, or thirteen years later, did not bring suit to set aside the conveyance or perform any other positive act of disaffirmance. Does this delay bar relief? "In the case of a deed, however, title thereunder has become vested and some affirmative act on the part of the former infant is necessary or the title will stand. Can that action be taken at any time until title is quieted in the claimant in possession by the statute of limitations? Or must the acts of avoidance be taken within a reasonable time? * * * In what is apparently the more numerous line of cases, it is held that the right to avoid a deed during infancy and recover the land, exists until it has been barred by the statute of limitations. But there are a considerable number of well-considered cases which hold that the election to avoid such a deed must be exercised within a *Page 192 
reasonable time after the infant becomes sui juris."14 R.C.L. 252. I find no New Jersey case on the question.
In determining which rule to adopt, we should bear in mind that the privilege of a former infant to avoid his deed is a legal right, enforceable in a court of law. Ross v. Adams,28 N.J. Law 161; 30 N.J. Law 505; Peacock v. Binder, 57 N.J. Law 374.
It may be said that his right is one of election; but he may sue or defend on his privilege without any prior notice or demand.Ross v. Adams, supra. His right is essentially a legal cause of action to recover the land. Such rights usually subsist until barred by the statute of limitations, and so it seems to me that the majority rule above stated, is the correct one and that complainant's right to avoid his deed continues for twenty years after he attained his majority. When complainant comes into chancery, not to establish and enforce an equitable right but to aid in the enforcement of a legal right, delay will not ordinarily or in the absence of special equities, bar equitable relief unless it has continued long enough to bar the legal right. Burne v. Partridge, 61 N.J. Eq. 434; Condit v.Bigalow, 64 N.J. Eq. 504, 514; Paterson v. East Jersey WaterCo., 74 N.J. Eq. 49, 97; affirmed, 77 N.J. Eq. 588; Massie v.Asbestos Brake Co., 95 N.J. Eq. 298, 311; 96 N.J. Eq. 612.
Of course, if complainant made his election and chose to ratify, he is bound and cannot now avoid his deed. No formal act is necessary to constitute ratification. Any conduct on the part of the former infant which evidences his decision that the transaction shall not be impeached, is sufficient for this purpose. Delay for many years, as in the present instance, while not enough of itself to prove ratification, may be enough when coupled with slight circumstances. Are there any facts in this case to indicate ratification? He permitted his mother and his reputed father to continue to live on the property but he also lived there himself with his wife until the quarrel which preceded the suit. When the property was rented, the rents were collected sometimes by one, other times by another of the parties, and the money was used for the benefit of them all. These people were a single family unit. While he was aware of the nature of the *Page 193 
deed he had signed, it is also true that Nicola frequently spoke of the property as his son's. The close relation between Nicola and Joseph which began when the latter was five years old, continued after he was twenty-one, and Nicola was the dominant one. I find no evidence of ratification.
Even though complainant never elected to abide by his deed, it may be that he is equitably estopped from denying ratification. Nicola attempts to spell out such an estoppel. When complainant came of age in 1919, the property was encumbered by a mortgage for $1,500 which had been executed the preceding October. It was canceled in 1922. Nicola says that the proceeds of the mortgage were used for the improvement of the property and that he paid it off out of his own funds, while complainant stood by consenting.
One month after the mortgage was made, Nicola bought a half interest in a farm near Keyport and paid for it $1,500. The money borrowed on the mortgage was used for this purpose. It was Nicola's own debt incurred for his benefit and it was his duty to pay it off out of his own funds. Complainant is not estopped.
Lastly, Nicola urges that he should be given a lien for the value of improvements made, for the purchase-money mortgage paid off, and for taxes discharged by him. The money for all these purposes came not from Nicola alone, but from the common fund of which I have spoken. Furthermore, the purchase-money mortgage was satisfied in 1916 while title was still in the boy. A gift is presumed. The improvements to the property consisted of adding four rooms to the house during the infancy of Joseph. Even if the cost was paid by Nicola, it would seem he is not entitled to reimbursement. Antonidas v. Walling, 4 N.J. Eq. 42. Current expenses paid by Nicola are offset by the benefit received by him through his use of the property.
There will be a decree annulling the deed. *Page 194